## JENSEN, APPELLANT, v. BARBOUR, RESPONDENT.

[Submitted March 11, 1895. Decided April 8, 1895.]

NONSUIT—*Instruction to jury.*—An instruction to the jury upon the trial to find for the defendant is, in effect, a nonsuit, and, if the evidence tended to prove the plaintiff's cause of action, it will be taken on appeal as proved. (*McKay* v. *Railway Co.*, 13 Mont. 15; *Creek* v. *McManus*, 13 Mont. 152; *Mayer* v. *Carothers*, 14 Mont. 274, cited.)

NEGLIGENCE—*Evidence sufficient to go to jury.*—Where, in an action for personal injuries, it is shown that the defendant's servant, the driver of a horsecar, permitted the plaintiff, a boy five years of age, to ride on the front platform of the car, from which he was thrown by the jolting of the car, thereby receiving the injuries complained of, the evidence of the defendant's negligence is sufficient to go to the jury.

SAME—*Independent contractor.*—One who is employed by the agent of the owner of a street railway, at a fixed monthly compensation, to run a car over the line and employ a driver, the agent having the whole control of the operation of the road, is not an independent contractor, and the owner of the railway is liable for the negligence of a cardriver employed by him.

SAME—*Same.*—An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid by the job.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION for personal injuries. Judgment was rendered for the defendant below by BENTON, J. Reversed.

*F. C. Park*, for Appellant.

I. The court erred in directing a verdict for the defendants. A direction of a verdict for the defendant at the close of the evidence is a nonsuit, within the meaning of section 242

of the Code of Civil Procedure. (*McKay* v. *Railway Co.*, 13 Mont. 15; *Creek* v. *McManus*, 13 Mont. 152.) The evidence in the case at bar not only tends, but undisputably proves, a state of facts identical with those in a Pennsylvania case, in which the court says: "Under the facts disclosed by the evidence no instructions could have rightfully been given that would have shielded the company from liability for the injury occasioned by the driver's negligence in allowing the plaintiff (a child of five years) to ride on the front platform of the car." (*Pittsburg etc. R. R. Co.* v. *Caldwell*, 74 Pa. St. 421; and see, also, *Muchlhausen* v. *St. Louis Ry. Co.*, 91 Mo. 344; *Sherman* v. *Hannibal Ry. Co.*, 72 Mo. 65; *Wilton* v. *Middlesex Ry. Co.* 107 Mass. 108; 125 Mass. 130; *West Philadelphia Ry. Co.* v. *Gallagher*, 108 Pa. St. 524; *Philadelphia City Ry. Co.* v. *Hassard*, 75 Pa. St. 367; *Brennan* v. *Fairhaven etc. Ry. Co.*, 45 Conn. 284; *Metropolitan Street Ry. Co.* v. *Moore*, 83 Ga. 253.) From the fact of ownership the defendants had control of the street railway line, and were liable for all damages resulting from their negligence. It is commonly said that the principle of *respondeat superior* does not apply where the negligent or wrongful act is that of an independent contractor, or of his servant or employee. But there are exceptions to this general doctrine, and this case is one of them. (See *Bower* v. *Peate*, 1 Q. B. Div. 321; *Colgrove* v. *Smith*, 33 Pac. Rep. 116; *Robbins* v. *Chicago*, 4 Wall. 675; *Water Co.* v. *Chicago*, 16 Wall. 566; *Curtis* v. *Riley*, 153 Mass. 123; *Eaton* v. *Boston etc. Ry. Co.*, 93 Mass. 500; *Stetler* v. *Chicago etc. Ry. Co.*, 46 Wis. 503; *Topeka etc. R. R. Co.* v. *Higgins*, 38 Kan. 375.) Taking the defendants as a carrier of passengers, they are liable for this injury to the plaintiff, regardless of the question whether Vaughn was a separate contractor or an agent of the defendants. And a person riding free is entitled to the same protection as one paying fare. (*Wilton* v. *Middlesex Ry. Co.*, *supra*; *Blair* v. *Erie Ry. Co.*, 66 N. Y. 313; *Jacobus* v. *St. Paul etc. R. R. Co.*, 20 Minn. 125. See, also, *Jones* v. *Pennsylvania Ry. Co.*, 8 Mackey, 178; Ray on Negligence, 548; *White* v. *Fitchburg R. R. Co.*, 136 Mass. 324; *Eaton* v. *Boston etc. R. R. Co.*, *supra*; *Great Western Ry.* v. *Blake*, 7 Hurl. & N. 987; *Thomas* v. *Rhymuey Ry.*, L. R. 6 Q. B. 266; *McElroy* v.

*Nashua etc. Ry. Co.*, 58 Mass. 400; *Sherman* v. *Menomenee etc. Lumber Co.*, 72 Wis. 128; *Illinois Cent. Ry. Co.* v. *Barron*, 5 Wall. 90; *Chicago etc. R. R. Co.* v. *McCarty*, 20 Ill. 385; *Ohio etc. R. R. Co.* v. *Dunbar*, 20 Ill. 623; *Chicago etc. R. R. Co.* v. *Whipple*, 22 Ill. 105; *Nelson* v. *Vermont etc. R. R. Co.*, 26 Vt. 717; *Railway Co.* v. *Williams*, 38 Ohio. St. 461; *Pennsylvania R. R. Co.* v. *Roy*, 102 U. S. 451; *Wabash etc. R. R. Co.* v. *Peyton*, 106 Ill. 534.)

II.    The evidence tended to prove that the injury was not only caused by the negligence of the driver of the car, but by the negligent manner in which the roadbed was kept. And the degree of care required of passenger carriers over the roadbed, etc., is the utmost vigilance which human prudence and foresight will suggest. (Ray on Negligence, 42, 48; *Topeka City R. R. Co.* v. *Higgins, supra; Taylor* v. *Grand Trunk R. R. Co.*, 48 N. H. 304; *Tuller* v. *Talbut*, 23 Ill. 357; *Le Barron* v. *East Boston Ferry Co.*, 11 Allen, 312; *Sawyer* v. *Hannibal Ry. Co.*, 37 Mo. 240; *Union Pac. Ry. Co.* v. *Hand*, 7 Kan. 380; *Pittsburg etc. Ry. Co.* v. *Thompson*, 56 Ill. 138; *Indianapolis etc. R. R. Co.* v. *Horst*, 93 U. S. 291; *Dunn* v. *Grand Trunk Ry. Co.*, 58 Me. 187; *Palmer* v. *Delaware etc. Canal Co.*, 120 N. Y. 170; *Gleason* v. *Virginia etc. Ry. Co.*, 140 U. S. 435; *Southern Kan. R. R. Co.* v. *Walsh*, 45 Kan. 635; *Searle* v. *Kanawa etc. Ry. Co.*, 32 W. Va. 370; *Peters* v. *Rylands*, 20 Pa. St. 497; *Toledo etc. R. R. Co.* v. *Conroy*, 68 Ill. 560; *Birmingham* v. *Rochester City Ry. Co.*, 59 Hun, 583; Ray on Negligence, 50.)

III.    The court erred in sustaining defendants' motion to amend the answer. The defendants had a reasonable time (fifty-six days) for answering, and the court erred in holding it "unreasonable," and allowing the amendment. Allowing an amendment to a pleading is a matter within the legal discretion of the trial court, and an appellate court will only reverse such ruling for an "abuse" of that legal discretion. (*Jensen* v. *Barbour*, 12 Mont. 566.)

*Ed L. Bishop*, and *Ashburn K. Barbour*, for Respondents.

Where an employer selects, with due care, a competent contractor, and to him commits a work that is lawful, and as such

may be done without injury to third persons, such employer cannot be held liable for injuries caused by the negligence of such contractor, or his servants, to third persons. (*Bibbs* v. *Railroad Co.*, 87 Va. 725; *Hilliard* v. *Richardson*, 3 Gray, 349; *Eaton* v. *European etc. R. R. Co.*, 59 Me. 520.) In this case, in the absence of evidence to the contrary, the respondents are presumed to have employed Vaughn to do the work in a lawful and reasonable manner. (*Butler* v. *Hunter*, 3 Hurl. & N. 826; *Smith* v. *Simmons*, 103 Pa. St. 32; *Lawrence* v. *Shipman*, 39 Conn. 587; *Bailey* v. *Troy etc. R. R. Co.*, 57 Vt. 252; *Aston* v. *Nolan*, 63 Cal. 269.) They were not the master of the contractor's servants, nor were they liable for their negligence. (*Slater* v. *Mersereau*, 64 N. Y. 139; *Mayor* v. *Pittsburg*, 46 Pa. St. 203; *Du Pratt* v. *Lick*, 38 Cal. 691; *Boswell* v. *Laird*, 8 Cal. 469; *Faujoy* v. *Searles*, 29 Cal. 249.) The test question generally is, Does the relation of master and servant exist? (*Blake* v. *Ferris*, 5 N. Y. 48; *Pawlet* v. *Railroad Co.*, 28 Vt. 397; Deering on Negligence, 218, 350; Wood on Master and Servant, 350, 581.) The evidence does not show that any control was retained over Vaughn or his servants in the manner of operating the road. And, even if the control claimed by the appellant was retained, it would not be sufficient to render respondents liable for the negligence of Vaughn or his servants. (*Rourke* v. *White Ross Colliery Co.*, 1 C. P. Div. 556; *Tibbitts* v. *Knoch etc. R. R. Co.*, 62 Me. 437; *Carbon* v. *Mills*, 27 Conn. 274; *Bibbs* v. *Northwestern etc. R. R. Co., supra; Hilliard* v. *Richardson, supra; Readie* v. *Railroad Co.*, 4 Ex. 244; *Blake* v. *Ferris, supra; Robinson* v. *Webb*, 11 Bush, 466; *Holland* v. *Willard*, 57 Pa. St. 374; *Quarnon* v. *Burnett*, 6 Mees. & W. 499; *Clark* v. *Hannibal etc. Ry. Co.*, 36 Mo. 202; *Callahan* v. *Burlington etc. R. R. Co.*, 23 Iowa, 562; *Hughes* v. *Railroad Co.*, 39 Ohio St. 461; *Burmeister* v. *Railroad Co.*, 47 N. Y. Sup. Ct. 264.) The main distinction relied upon by the appellant is that the respondents were operating their road under a franchise, and that therefore they were under such obligations imposed thereby that they could not escape from the injury complained of by delegating the operation of said road to another, but we do not think the fact takes the case out of the general rule

above stated.   (See *Houston etc. R. R. Co.* v. *Meede,* 50 Tex.
77; *Cunningham* v. *International R. R. Co.,* 51 Tex. 503;
*Callahan* v. *Burlington etc. R. R. Co., supra; Clark* v. *Ver-
mont etc. R. R. Co.,* 28 Vt. 103; *Hoblit* v. *London etc. R. R.
Co.,* 4 Ex. 255; *Atlantic etc. R. R. Co.* v. *Kimberly,* 87 Ga.
161; *Fulton St. R. R. Co.* v. *McConnell,* 87 Ga. 756.)   We
admit that the Illinois cases cited by appellants are against the
position held by respondents in this case, but they are in con-
flict with the great weight of authority in this country.   In
this case neither the respondents nor their contractor, Vaughn,
was a carrier of passengers, and the appellant was a trespasser.
It is unnecessary, therefore, to review the cases cited upon the
degree of diligence a railroad company, or persons operating a
railroad, are required to exercise toward passengers.   A railroad
company is not liable for running over a child four years old,
who is a mere intruder or trespasser, if the act is not done care-
lessly, or with gross and reckless carelessness.   (*Morrissy* v.
*Eastern R. R. Co.,* 126 Mass. 377; *Fitzpatrick* v. *Fitchburg
R. R. Co.,* 128 Mass. 14; and see Deering on Negligence, 418.)
If the acts constituting a neglect be specifically pleaded no
other can be proven.   (*Batterson* v. *Chicago etc. R. R. Co.,* 49
Mich. 184.)

De Witt, J.—Plaintiff's complaint is for damages for per-
sonal injuries sustained while riding on defendant's horse street-
car.   The district court, upon the trial, directed the jury to
find for the defendant.   Plaintiff appeals from the judgment
assigning error in that order.   Such order must be treated as
in the nature of a nonsuit, in this respect, that, if the evidence
tended to prove plaintiff's cause of action, it will be taken on
appeal as proved.   (*McKay* v. *Montana Union Ry. Co.,* 13
Mont. 15; *Creek* v. *McManus,* 13 Mont. 152; *Mayer* v. *Car-
rothers,* 14 Mont. 274.)

There was evidence that the plaintiff, a boy five years of age,
was riding on the front platform of the horsecar, with the
knowledge of the driver, and that the car struck a stone and
jolted the plaintiff off, and ran over him, inflicting the inju-
ries complained of.

One ground of the motion to direct the jury to find for the

defendant was, that it was not shown that the defendant was guilty of any negligence. We are of opinion, however, that to allow a boy of such tender years to ride on the front platform of a horsecar was evidence of negligence sufficient to go to the jury.

Upon this point we quote as follows from *Pittsburgh etc. Ry. Co.* v. *Caldwell*, 74 Pa. St. 421: "It is clear, from all the evidence in this case, and under the instructions of the court, the jury must have found that the accident which resulted in the loss of the plaintiff's leg would not have happened if she had not been permitted to ride on the front platform of the defendant's car. If the rules of the company had not forbidden it there can be no doubt that it was gross negligence for the driver to allow children as young as the plaintiff and her companion to get on the front platform and to ride there. If they got on without his permission, instead of consenting that they might remain on the platform, it was his duty to compel them to go on the inside of the car, or to stop and put them off; and, if the plaintiff was injured by his negligence in allowing them to ride on the platform, the company is clearly liable for the injury, unless the plaintiff's negligence contributed to produce it. But negligence cannot be imputed to one who has not sufficient capacity or discretion to understand the danger and to use the proper means to guard against it. In this case it is conceded that negligence is not imputable to the plaintiff, who was an infant of tender age, and not of sufficient capacity to foresee the danger to which she was exposed." (See, also, the following cases cited by appellant, which are in point: *Muelhausen* v. *St. Louis Ry. Co.*, 91 Mo. 344; *West Philadelphia Ry. Co.* v. *Gallagher*, 108 Pa. St. 524; *Philadelphia City Ry. Co.* v. *Hassard*, 75 Pa. St. 367; *Metropolitan St. Ry. Co.* v. *Moore*, 83 Ga. 452. See, also, *O'Mara* v. *Hudson Ry. Co.*, 38 N. Y. 445; *Robinson* v. *Code*, 22 Vt. 213; *Lynch* v. *Murdin*, 1 Q. B. 29; 2 Thompson on Negligence, 1180, et seq; Ray on Negligence c. 36, and cases cited; Shearman and Redfield on Negligence, § 49.) We are satisfied that, under the authorities, the evidence of negligence in this respect was sufficient to go to the jury.

Our view upon this point of the motion to direct a verdict

in favor of respondent disposes of the whole of that motion, except the sixth ground thereof, which is as follows: "That the evidence shows that the negligence complained of, if any, was the negligence of the independent contractor, Vaughn, or his servant, and not that of the defendant or his servant or agent."

The question presented is whether the person immediately causing the injury to plaintiff stood in the relation of a servant of defendant, or whether he were the servant of an independant contractor, for whose acts of negligence the defendant was not liable. The defendant was the owner of a streetcar franchise in the city of Great Falls. He had built a car track extending over six or seven blocks, and had one or two cars on the track. Defendant lived in Helena. J. O. Gregg of Great Falls was his agent, acting for him in relation to this streetcar franchise, track, and cars. Greggs was also one of the owners of the railway. Defendant Barbour was trustee of the railway. He was sued apparently as trustee, and also personally. It seems that the railway people were not operating their line very extensively, for Mr. Gregg testified that he, as agent for the trustee, hired one Vaughn to run the car one trip a day. Gregg says that the contract with Vaughn was that he was to be paid so much money per month to haul the car over the line once a day each way, and to furnish a driver. In pursuance to this arrangement Vaughn furnished the driver and was moving the car along the track at the time the plaintiff was injured. Defendant contended that by virtue of this employment Vaughn was an independent contractor, and that defendant was not liable for the negligence of Vaughn's driver. Mr Gregg, however, testified that there was nothing as to collecting fares in this contract with Vaughn. In fact fares were not collected.

Without expressing any opinion as to whether these railway people could lease their road and rolling stock to another, for the purpose of operating it, it is sufficient to note here that no such lease was made. The track and rolling stock were not delivered into the possession of Vaughn at all. He did nothing more than to haul the car one trip a day.

Mr. Gregg further testified that he spoke to the plaintiff's father in regard to keeping his boys away from the cars; that

he also told other parties to keep their boys away, that they did not want the boys there. He said that he notified those living along the car line to keep their small boys away; that they interfered with the running of the cars by stealing almost the cars, carrying off pieces, breaking out windows, pushing the cars and jumping on them, and interfering with the business of the railway people in every way, and also breaking the padlocks they had put on the cars. Gregg also said: "I have always objected to the boys riding on the cars when they were being driven; I had no direct control over the drivers, but I ordered Mr. Vaughn to see that the drivers kept the boys away; I was trying to protect the property; I had driven the plaintiff off the cars several times. The contract with Vaughn was that I was to pay him so much money a month to haul the car over the line each way once a day, and furnish a driver; I had nothing to do with the drawing of the car backward and forward, or directing the manner in which it should be done. I sometimes spoke to Vaughn about matters concerning the protecting of the property and driving the boys off; whenever I saw the boys running about the cars, either when being driven or standing idle, I chased them away; I don't remember that I told the drivers to keep them away, but I remember telling him one day to skin them with his whip; there might have been other times that I gave these orders, but I don't remember any particular date; whenever I saw the boys, if the driver was around, I would speak to the driver, but I always made it a point to see Mr. Vaughn about it, and Vaughn and myself very frequently went over; we chained the cars once or twice to keep the boys away.

Under these facts the district court held that Vaughn was an independent contractor, and that the defendant was not liable for his negligence.

To draw the distinction between independent contractors and servants is often difficult; and the rules which courts have undertaken to lay down on this subject are not always simple of application. A rule as often quoted as any is stated in the syllabus of the case of *Bibbs* v. *N. & W. R. R. Co.*, 87 Va. 711, after an able review of the authorities, as follows: "Independent contractor is one who renders service in the course of

an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid by the job."

*Brackett* v. *Lubke*, 4 Allen, 138, is also a leading case. The opinion states as follows: "The distinction on which all the cases turn is this: If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer by which he has agreed to do the work on certain specified terms, in a particular manner, and for a stipulated price, then the employer is not liable. The relation of master and servant does not subsist between the parties, but only that of contractor and contractee. The power of directing and controlling the work is parted with by the employer, and given to the contractor. But, on the other hand, if the work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it, if he deems it necessary or expedient. This distinction is recognized in the cases adjudged by this court. (*Sproule* v. *Hemmingway*, 14 Pick. 1; *Stone* v. *Codman*, 15 Pick. 299; *Hilliard* v. *Richardson*, 3 Gray, 349; *Linton* v. *Smith*, 8 Gray, 147.)"

In 2 Thompson on Negligence, page 909, et seq., we find the following:

"SEC. 35.   In every case the decisive question is, Had the defendant the right to *control*, in the given particular, the conduct of the person doing the wrong?   On this question the contract under which the work has been done must speak conclusively in every case, reference being had, of course, to surrounding circumstances.   This being so, the mere fact that the agent who did the injury carried on a separate and independent employment will not absolve his principal from liability.   (*Brackett* v. *Lubke*, 4 Allen, 138; *Sadler* v. *Henlock*, 4 El. & Bl. 570.)   'If such were the rule a party would be exempt from responsibility even for the negligent acts of his domestic servants, such as his cook, coachman, or gardener.'"

"SEC. 39.   Perhaps the most usual test by which to deter-

mine whether the person doing the injury was a servant or an independent contractor is to consider whether he was working by the job or at stated wages—so much per day, week, or month. (*Schular* v. *Hudson River R. Co.*, 38 Barb. 653.) A person who works for wages, whose labor is directed and controlled by the employer, either in person or by an intermediate agent, is a servant, and the master must answer for the wrongs done by him in the course of his employment. A person who, for a stated sum, engages to perform a stated piece of labor in which he is skilled, the proprietor of the work leaving him to his own methods, is an independent contractor; the proprietor does not stand in the relation of superior to him, and is not answerable for the wrongs done by him or his servants in the prosecution of the work, unless special circumstances exist making him so. (*Morgan* v. *Bowman*, 22 Mo. 538.) The rule has been applied so as to exempt a railway company from liability for the negligence of a contractor who had engaged to do a piece of filling at twenty cents per yard, although the company furnished track, trestle, cars, mules, and drivers. (*Central R. Co.* v. *Grant*, 46 Ga. 417.) The fact that the employee was hired, not for a definite time, but to perform a particular job, does not, however, of itself negative the relation of master and servant, for under such a contract the employer may well retain full control over him; and it must constantly be borne in mind that the power to *control*, on the part of the employer, is the essential fact establishing the relation."

We also find it stated in Shearman and Redfield on Negligence, sections 76 and 77, as follows:

"SEC. 76. Although, in a general sense, every person who enters into a contract may be called a 'contractor,' yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do specific jobs of work for other persons, without submitting himself to their control in respect to all the petty details of the work. It is not altogether easy to give an accurate definition of the word 'contractor,' as it is used in the reports, and as we shall use it hereafter; but we think we have approximated to accuracy. The true test, as it seems to us, by which to determine whether one who renders

service to another does so as a contractor or not, is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the *result* of his work, and not as to the means by which it is accomplished."

"SEC. 77.   One who has an independent business, and generally serves only in the capacity of a contractor, may abandon that character for a time, and become a mere servant or agent, and this, too, without doing work of a different nature from that to which he is accustomed.   If he submits himself to the direction of his employer as to the details of the work, fulfilling his wishes not merely as to the result, but also as to all the means by which that result is to be attained, the contractor becomes a servant in respect to that work.   And he may even be a contractor as to part of his service, and a servant as to a part.   Whether he works as a contractor or as a servant is a question of mingled law and fact, which it is scarcely possible to decide by any fixed rule which will accurately govern those cases where the one occupation borders closely upon the other. In most instances the distinction is easily observed."

Applying the principles of the decisions to the facts of the case at bar we cannot hold that Vaughn was an independent contractor.

The question raised by the appellant as to whether the railroad people could, under their charter, delegate the running of their cars to another, is not necessary to discuss, for the reason that we are of opinion that Vaughn was not in the relation of an independent contractor.   Neither the franchise, the roadbed, or the rolling-stock was leased to Vaughn or given into his control.   He was simply employed by the month to run a car one trip a day.   We cannot understand that his position differed materially from that of a driver employed to drive a car ten trips or twenty trips a day.   All drivers are employed to perform certain services, and to some extent they perform them in their own way, as does one's cook, his gardener, or his coachman, as remarked in the case of *Brackett* v. *Lubke, supra.*

Referring again to the rule as laid down in *Bibbs* v. *N. & W. R. R. Co., supra,* the respondent argues that Vaughn represented the will of his employer only as to the result of his

work, and not as to the manner of its performance; that is to say, that Vaughn contracted to deliver to his employer the result of putting the car over the track once a day by his own methods.   But so it might be argued that one's coachman contracts to produce the result of conveying his master from his house to his office, or wherever he may wish to go, or one's cook contracts to produce the result of placing before his master his daily food.   But such is not the sense in which the word "result" is used in the rule.   We think that the word "result," as so used, means a production or product of some sort, and not a service.   One may contract to produce a house, a ship, or a locomotive; and such house, or ship, or locomotive produced is the "result."   Such "results" produced are often, and probably generally, by independent contractors.   But we do not think that plowing a field, mowing a lawn, driving a carriage, or a horsecar, for one trip or for many trips a day, is a "result" in the sense that the word is used in the rule.   Such acts do not result in a product.   They are simply a service.

In addition to these views mentioned we have the fact in this case, that the railway people did not part with the possession or the right of possession or control of the railway plant. It would perhaps be difficult to draw a clear distinction between the relations which Mr. Gregg held to the railway property and the drivers and that of any person admittedly having supervision over them.   No superintendent assumes control over every minute detail of an employee's work.   In all work which demands sufficient intelligence to require a man instead of a machine the man must be left to direct his own movements to some extent.   But it is clear, from our review of Mr. Gregg's testimony, that he did not consider the driver of the car as the servant of a contractor independent of the railway people.   (See his testimony cited above.)   Mr. Gregg qualified his statements somewhat by an attempt to disclaim any supervision of the actual moving of the car, but we think that his testimony, as a whole, did not place Vaughn in the position of an independent contractor.

After stating any rule which is to determine whether one is an independent contractor or a servant it is very easy, by a little casuistry, to construe any person who performs a service

to be an independent contractor.    We have endeavored to point out such dangers.    We think that the district court fell into just such a mistake.    If Vaughn, in this case, is an independent contractor, a very few steps farther in the same direction of construction would make all servants independent contractors. We are wholly satisfied that Vaughn was not an independent contractor, but, on the contrary, stood in the relation of an employee, for wages, of defendant in this case.

The judgment is therefore reversed, and the case is remanded for a new trial.

*Reversed.*

HUNT, J., concurs.