EDWARD WESTOVER, APPELLEE, V. ABRAHAM L. HOOVER
ET AL., APPELLANTS.

FILED JANUARY 9, 1911.  No. 16,249.

1. **Master and Servant:** INDEPENDENT CONTRACTOR. One who contracts
   to sink a well at an agreed price per foot if he procures a supply
   of water, and not to be paid if he fail to do so, using his own
   materials and machinery, and furnishing his own labor, is an
   independent contractor.

2. ———: EXISTENCE OF RELATION. A person who is in the general
   employment of one person may be temporarily in the service of
   another with respect to a particular transaction or piece of work
   so that the relation of master and servant arises between them,
   even though the general employer may have an interest in the
   special work.

3. ———: DUTIES OF MASTER. In such case the duty of using care to
   see that a safe place to work is furnished, or proper warning
   given, devolves upon the special employer.

4. ———: ———. Where the independent contract is to be carried
   out on the general employer's premises, he owes the same duty
   to the independent contractor and his servants as to any other
   persons invited to the particular portion of the premises where
   the work is to be carried on.

5. **Evidence** examined, and *held* not to sustain the verdict.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Reversed.*

*J. B. Strode, E. C. Strode* and *D. C. Burnett,* for appellants.

*E. P. Holmes* and *G. L. De Lacey, contra.*

LETTON, J.

This is an action for personal injuries alleged to have
been suffered by the plaintiff while in the defendant's serv-
ice on account of having been set to work by one Devore,
the defendants' foreman, in an unsafe place, near a pit

containing an ice machine in operation, which was not properly lighted, a piston and revolving wheel upon which was left unguarded, and no warning was given him as to the danger, by reason of which his heel was caught and crushed by the revolving wheel and piston. The defense is a denial that the relation of master and servant existed; an allegation that plaintiff was in the employ of an independent contractor; a plea that plaintiff was familiar with the premises; assumption of risk; and contributory negligence.

Defendants are proprietors of a hotel with a large basement or cellar under the building containing boilers, engines, pumps, and other machinery used in the operation of the business. The plaintiff is a young man 23 years of age, of considerable experience in working around machinery, having been employed for about a year at the city waterworks, part of the time running one of the pumps there. About a week before the accident he was employed by Devore, defendants' foreman, to dig a pit in the basement, in which it was proposed to bore a new well and to place pumping machinery, and to do other common labor. Prior to this time one Loso, who was in the well-boring business, had made a contract with the defendants whereby he was to bore a well in the pit where plaintiff worked. He was to furnish the labor, machinery, and material, except such material as had been taken from the old well, and was to receive $1.50 a foot if he procured a supply of water, and no payment if he failed to do so. On the Saturday before the accident, A. L. Hoover, one of the defendants, telephoned to Loso urging him to come and do the work. Loso informed him that he was short of laborers, as two of his men were sick. Hoover then told him that he had some extra help that he could use. On Monday forenoon, about 11 o'clock, Loso came to the hotel. Up to this point there is no conflict in the evidence.

Plaintiff testifies that when he finished the work which he was doing, about 11 o'clock in the forenoon, Devore

told him to go to Loso's place to help Loso bring
in some machinery that afternoon, and gave him street
car fare to that point. Devore denies this, and says that
he told plaintiff his work was done, but that Loso needed
help, and that he could get a job with him. Loso says
that when he came to the hotel that morning Devore
brought out three men to him, and that he took the plain-
tiff and another named Stone to use in his work. Plain-
tiff went to Loso's and assisted him in bringing to the hotel
a small engine and other machinery to use in sinking the
well. Loso and he worked at placing this engine in the
basement that afternoon, but did not finish setting it
that day. A large ice machine about twelve feet high
stood in a pit about three feet deep in the floor of the
basement. The basement floor and the sides and floor
of the pit were made of concrete. There was a space of
three feet between the end of the machine and the walls
of the pit. There being another pit nearby, it was neces-
sary to set Loso's engine so that a pulley projected over
one corner of the pit. Plaintiff testifies that the next
morning, while Loso and he were "lining up" the engine
so as to set it properly for running the machinery at the
well, Loso said, "We will put the belt on," and lifted the
center portion of the belt, while the plaintiff went into
the pit in order to slip the belt over the pulley; that in
the act of doing so his foot slipped, or he stepped back,
when his heel was caught by a projecting crank pin on
the wheel of the ice machine, and was crushed between
the pin and the floor of the pit. There is a lower pit
about eight inches deeper than the main pit. The crank
pin of the revolving wheel came about one-half inch from
the edge of the lower pit and went down into it about
two inches as it revolved. He testifies that it was dark
at that place, and that while he had knowledge that the
ice machine was there, and that it had three cylinders
and piston rods and wheels, he was not familiar with the
location or construction of the revolving wheel at the
bottom of the pit; that the piston rod is flush with or

just inside the machine, and the revolving wheel is about flush with the end of the machine. On cross-examination he says he cannot say whether Loso told him to get into the pit or not, but that he thought the most convenient way to put the belt on the pulley was by getting into the pit. The pulley was about 18 inches above the floor of the basement and about $4\frac{1}{2}$ feet above the floor of the pit. He first testified that it was dark at this point, but afterwards said that there were a number of electric lights near the machine, and, finally, "that it was quite light down there," and that he did not think he was hurt because the lights were not burning. After being hurt he pulled his foot out and rolled or lay on the side of the pit. He testified that he then saw for the first time that the base of the ice machine was in a lower pit about eight inches deep. He has not been to the locality of the accident since that time. It is evident from his testimony that there was light enough to enable him to see the wheel and crank which he describes, and also sufficient to enable him to see that the crank decended into the lower pit when the piston rod came down.

The evidence in behalf of the defendants is very positive that there are a large number of electric lights in the basement, in the boiler room, and around the machinery.; that these lights are all on one circuit, and were kept burning night and day.

In the discussion of the legal principles involved, we will assume that the testimony of the plaintiff and his witnesses and the undisputed testimony of the others was true, since the jury found for him by their verdict. The sole question presented is whether the evidence is sufficient to support a verdict for the plaintiff against the proprietors of the hotel. It is clear that Loso was an independent contractor. In fact, this is undisputed. Accepting the plaintiff's statement that Devore directed him to work for Loso, also Loso's undisputed testimony that he made no contract or agreement as to employment and wages with the plaintiff, but that he used the men

that Devore pointed out to him under the previous arrangement with Hoover, the question arises whether at the time of the injury the relation of master and servant existed between plaintiff and defendants.

The plaintiff's theory is that while he was engaged in the defendants' service he was furnished an unsafe and dangerous place in which to work, and was not warned of the danger, and that consequently the defendants are liable. The defendants contend that at the time he was hurt he was working for Loso, and not for them; that it was unnecessary for him to enter the pit; that the ice machine was properly constructed and properly lighted; and that the accident was the result of plaintiff's own carelessness. We think that the relation of master and servant at this particular time and with relation to this particular work existed between Loso and the plaintiff, and not between him and the defendants. While, according to his evidence, he could look to them for wages, he was not under their control or direction, but was working for Loso in the prosecution of his independent contract. It is true that his time was kept by Devore, but the entry in the timebook, which was produced at plaintiff's instance, shows that the time of both Stone and Westover was kept, as the book recites, "for Loso."

Some very interesting questions often arise where the general servant of one enters into the special service of another. While the general prinicples are well settled, the circumstances of each particular case determine whether the general employer or the special or both are liable in case of an accident either to an employee or to a third person. In order to hold one liable for injury to a man in his employment, the relation of master and servant must exist at the time and with relation to the very occupation or transaction in which the servant is engaged. The fact of employment may or may not be significant, depending upon all the circumstances. If I employ a chauffeur, and if while he is running my car, without my knowledge or consent, for his own purposes,

he is hurt by reason of a defect in the car of which I was aware, no court would hold me liable on account of the fact alone that he was in my employment. The master is the person in whose work he is engaged, and who has the right to direct and control his actions. "The payment of an employee by the day, or the control and supervision of the work by the employer, though important considerations, are not in themselves decisive of the fact that the two are master and servant. * * * Servants who are employed and paid by one person may nevertheless be, *ad hoc*, the servants of another in a particular transaction, and that, too, even where their general employer is interested in the work. Obviously they may desert the service of their lawful master, and work for another; or he may lend their services to another person, abandoning to the latter all control over them; or they may, without consulting their master, but in good faith, assist a person independently employed to do something which will benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other person." Shearman and Redfield, Law of Negligence (5th ed.) secs. 160, 161. *Murray v. Currie*, 6 L. R. C. P. Div. (Eng.) *24; *Dallas Mfg. Co. v. Townes*, 148 Ala. 146, 41 So. 988; *Olive v. Whitney Marble Co.*, 103 N. Y. 292; *The Turquoise*, 114 Fed. 402; *Rourke v. White Moss Colliery Co.*, 2 L. R. C. P. Div. (Eng.) 205; *Wyllie v. Palmer*, 137 N. Y. 248, 19 L. R. A. 285; *The Gladestry*, 128 Fed. 591; *Delory v. Blodgett*, 185 Mass. 126; *Parkhurst v. Swift*, 31 Ind. App. 521; *Waldock v. Winfield*, 2 L. R. (1901) K. B. Div. (Eng.) 596; *Higgins v. Western Union Telegraph Co.*, 156 N. Y. 75; *Brown v. Smith & Kelley*, 86 Ga. 274, 22 Am. St. Rep. 456; *Central Coal & Iron Co. v. Grider's Adm'r*, 115 Ky. 745, 65 L. R. A. 455, and note on page 445.

It is apparent from the facts stated that the defendants were under no special obligations or duty to furnish the plaintiff a safe place to work, since he was not, strictly

speaking, working for them; but, since by the contract with Loso the defendants invited Loso and his employees upon their premises for the purpose of performing the contract, the duty of defendant to Loso and to plaintiff was the same as to all other persons whom they might invite to that particular portion of the basement. If that portion of the premises in which a contractor is required to work is subject to special hazard, whether on account of the absence of lights, the presence of dangerous machinery, or other dangers the existence of which is not apparent and obvious, it is the owner's duty to warn the persons whom he has invited there of the risks to which they may be exposed, and if he fails in this duty, and in consequence thereof the invitee is injured, an action for damages will lie. The principle is the same as where a storekeeper leaves an open and unguarded trapdoor where his customers might reasonably be expected to walk. At the same time a person inviting contractors to a place where machinery in operation is in plain sight has the right to assume that they are possessed of ordinary common sense and a knowledge of the risk ordinarily incurred by working in close proximity to moving machinery. If the dangers are open and obvious he is entitled to rely upon the exercise of ordinary care, but if the dangers are of a hidden and concealed nature then he must take pains to give warning of the same, otherwise he may make himself liable in a proper action if a contractor or his employee is injured by such neglect. 4 Thompson, Law of Negligence, sec. 3736; *Haven v. Pender*, 11 L. R. Q. B. Div. (Eng.) 503.

Applying these principles to the facts in this case, there is nothing to show that the ice machine was other than properly constructed and properly equipped and managed in every way, or that the fact that it was placed in a pit about three feet below the floor of the basement was in any way a negligent placing or construction of the machine.

It is shown without dispute that there was plenty of

room for persons not engaged in the operation of the machine to pass over the main floor of the basement, and that plaintiff had no duty to perform in respect to its operation. A day or two before the accident he had been occupied in wheeling dirt from the new well and emptying it into the old one, passing close by the corner of the pit, but he says that, while he knew in a general way of the operations of the machine, he gave it no attention.

The ground of recovery alleged by the plaintiff is that he was defendants' servant, and that under the direction of their foreman, Devore, he was put to work in a dangerous place without warning. No instructions are in the record, so we must presume the jury were instructed in accordance with the issues made by the pleadings. The proof failing to show that the relation of master and servant existed between the parties at the time, and in respect to the transaction, the plaintiff cannot recover. *Eldred v. Mackie*, 178 Mass. 1; *Sullivan v. New Bedford Gas & Edison Light Co.*, 190 Mass. 288; *Callan v. Pugh*, 66 N. Y. Supp. 1118; *King v. New York C. & H. R. R. Co.*, 66 N. Y. 181.

We are also of the opinion that, even if the pleadings would permit recovery upon the theory that the defendants were guilty of a breach of duty in inviting Loso and his workmen into a place of danger, the evidence would not support a verdict. The plaintiff shows that he could see the revolving wheel in the bottom of the pit, and his father, who went to work for Loso in his place after the accident, testifies that by standing on a plank which was across the corner of the pit he put the belt on the pulley the next morning without going into the pit.

The evidence does not justify the verdict, and the judgment of the district court is

'REVERSED.

REESE, C. J., not sitting.