MILO KIMBALL, Claimant and Appellant, v. INDUSTRIAL ACCIDENT BOARD, Defendant and Respondent.
No. 10162.
Submitted November 15, 1960. Decided December 16, 1960.
357 P.2d 688.

Richard J. Conklin, White Sulphur Springs, argued orally for appellant.

L. V. Harris, Helena, argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the fourteenth judicial district, which judgment affirmed an order of the Industrial Accident Board denying the claim of appellant for Workmen's Compensation.

On October 8, 1956, the appellant, hereinafter referred to as the claimant was injured while engaged in the logging in-

dustry. The claimant had entered into two written contracts with Castle Mountain Lumber Company, one on July 21, 1956, and one on September 26, 1956. Under the contracts, the claimant was to cut and log and mill certain timber on the Watson ranch in Meagher County according to state forestry laws and regulations and according to terms of purchase of the timber by Castle Mountain Lumber Company from Watson. The contracts set out the price and a few other details and then provided that the claimant was "to operate as an independent contractor" and that he was to provide his own "accident insurance, social security, unemployment compensation with liability and property damage coverage for equipment and man."

The claimant was 52 years of age at the time of the contracts. He had been a logger or connected with the logging and milling industry all of his life. Prior to July of 1956 he lived in Oregon and was a partner with his son, owning and operating a sawmill. He contacted one Vollstedt, the moving force behind the Castle Mountain Lumber Company in Portland, Oregon, about work. Vollstedt told him of the lumbering operation near White Sulphur Springs, Montana. The claimant came to Montana, contacted the Castle Mountain Lumber Company at White Sulphur Springs, looked over some of the timber and returned to Oregon. There he prepared to enter into the enterprise in Montana by buying a mill at Lebanon, Oregon, a truck at Newport, Oregon; by hiring two or three former employees in Oregon; by engaging one Elton Holt and his caterpillar tractor in Oregon; and by borrowing two trucks from his former operation for transporting the mill and caterpillar tractor. He then moved the outfit to Montana and entered into the two previously mentioned contracts. He also entered into another contract of purchase from the Castle Mountain Lumber Company of an additional mill and diesel engine to be paid for out of the operation at an agreed price per thousand board feet.

After signing the contracts, claimant moved to the Watson Ranch near White Sulphur Springs and proceeded to construct roads for logging and prepare and construct the mill-site. He chose his own location; he started cutting and sawing cants; and he employed about eight or ten men in the operation. Claimant registered as an employer with the Industrial Accident Board, but never paid any premiums on his payroll. He had a bookkeeper and instructed the bookkeeper to enroll claimant as an employer with the Industrial Accident Board, the Unemployment Compensation Commission, and to attend to Social Security deductions. These matters were never completed solely because, as claimant testified, he had insufficient funds. According to claimant he had started the enterprise with $525 cash, borrowed machinery and credit. In the conduct of the operation, claimant chose his own site, supervised the cutting, selected and hired his own men, paid them from his own bank account, set their wages, furnished saws and equipment, and provided a camp of some sort for them.

No one from Castle Mountain Lumber Company gave any instructions on any feature of the operation except as to the lumber size and that the claimant should cut and dispose of slashings according to state law. On one occasion a representative of the Company and a state forester visited the operation and gave instructions on cutting and slash regulations.

The claimant actively engaged in the operation pursuant to the written contracts until his injury some two and one-half months later. Even then, after October 8, 1956, he supervised the operation. His son, Jack, who was a party to the second contract and had put up the money for the operation, attended to some of the supervision after the accident, but claimant continued to engage in the enterprise after the accident until December 1956.

The foregoing recital of the circumstances is taken from the

record of claimant's own testimony. The fact statement alone answers the question on this appeal.

The specifications of error all go to one question. That is, under the facts and circumstances recited, was the Industrial Accident Board and the district court correct in holding that the claimant was an independent contractor within the definition of that term by the Montana Workmen's Compensation Act? The answer is very clearly, yes.

R.C.M. 1947, § 92-411, defines employee:

" 'Employee' and 'workman' are used synonymously and mean every person in this state, including a contractor *other than an 'independent contractor'* who is in the service of an employer as defined by the preceding section, under any appointment or contract of hire, expressed or implied, oral or written * * *.' "

R.C.M. 1947, § 92-438, defines an independent contractor as follows:

" 'An independent contractor' is one who renders service in the course of an occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished."

In Shope v. City of Billings, 85 Mont. 302, 306, 278 P. 826, 827, this court in affirming a directed verdict for the city, summarized the law relating to independent contractors as follows:

"As was observed in Jensen v. Barbour, 15 Mont. 582, 39 P. 906, 'to draw the distinction between independent contractors and servants is often difficult; and the rules which courts have undertaken to lay down on this subject are not always simple of application.' Mr. Justice DeWitt, who wrote the opinion, seems to have favored the rule stated in Bibb's Admr. v. Norfolk & W. R. R. Co., 87 Va. 711, 14 S.E. 163: "An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as the result of his work, and not as to the means whereby it

is accomplished, and is usually paid for the job.' And see Neyman v. Pincus, 82 Mont. 467, 267 P. 805.

"It is said in 14 R.C.L. 67, that according to the definition substantially adopted by many courts, with some variations in language, an independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subjected to the control of his employer except as to the result of his work. And see Cooley on Torts, (3d Ed.) 1098.

"The use of the word 'result' in these definitions, and the reasoning employed by Mr. Justice DeWitt in Jensen v. Barbour with respect to its use in this connection, are criticized in the note appended to Westover v. Hoover, 88 Neb. 201, 129 N.W. 285, 19 A.L.R. 215 see page 234. Its use was avoided in Allen v. Bear Creek Coal Co., 43 Mont. 269, 115 P. 673, where this court said: 'The relation of the parties under a contract of employment is determined by an answer to the question: Does the employee in doing the work submit himself to the direction of the employer, both as to the details of it, and the means by which it is accomplished? If he does, he is a servant, and not an independent contractor. If, on the other hand, the employee has contracted to do a piece of work, furnishing his own means and executing it according to his own ideas, in pursuance of a plan previously given him by the employer, without being subject to the orders of the latter as to detail, he is an independent contractor. 1 Shearman & Redfield on Negligence, §§ 164, 165; Poor v. Madison River Power Co., 38 Mont. 341, 99 P. 947; Jensen v. Barbour, 15 Mont. 582, 39 P. 906.' But the last-quoted language goes beyond the essentials of a general definition. 19 A.L.R., note pages 234, 235.

"The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the

control of the employer he is a servant; if not under such control, he is an independent contractor. 14 R.C.L. 67.

"One who contracts to do a certain piece of work according to his own methods and without subjection to the control of his employer is, while so engaged, an independent contractor. Alexander v. R. C. Sherman's Sons Co., 86 Conn. 292, 85 A. 514; Jaggard on Torts, § 79.

"As to control, it is necessarily implied in every contract that the employer may insist that the contract shall be performed according to its specifications. 14 R.C.L. 68.

"After an exhaustive analysis of the authorities the author of the note in 19 A.L.R. 226, suggests, 'The following brief and simple formula which, as regards its esssential features, is mainly supported by the authorities, is sufficient for the purposes of a general definition,' and at the same time, he says, is more accurate than most of those discussed in the note: 'An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed.' This definition, in the main, is in harmony with what is said in Allen v. Bear Creek Coal Co., supra, and we agree that as a general definition it is sufficient."

More recently in Grief v. Industrial Accident Fund, 108 Mont. 519, 93 P.2d 961, this court reviewed Shope v. City of Billings, supra; Allen v. Bear Creek Coal Co., 43 Mont. 269, 115 P. 673, and Greening v. Gazette Printing Co., 108 Mont. 158, 88 P.2d 862, and other Montana authorities. In the Grief case the court found that under the facts and circumstances therein there was direct and close control by the employer during a temporary employment. But the court reaffirmed the general rules as previously quoted from the Shope case.

In Greening v. Gazette Printing Co., 108 Mont. 158, at page 170, 88 P.2d 862, at page 866, supra, this court said:

"Counsel for the appellant have cited a number of cases laying down elaborate rules for determining whether or not

a particular party is an independent contractor or a mere servant. The determination of the question is often difficult, and it is sometimes necessary to have recourse to a number of rules laid down by the courts to determine whether the actor is an independent contractor. Recourse to the various refinements of the rule is necessary in those cases where it is impossible to determine from the contract and from the action of the party, the degree of control exercised or the degree of control which the employer might exercise over the person performing the work. It is not necessary here to consider all of these various refinements.''

This same situation exists here. The appellant has urged criteria from 99 C.J.S., Workmen's Compensation, § 92, as the tests. Even using those tests and requirements here, from the fact statement it is easy to see that an independent contractor relationship existed. However, it is not necessary here to discuss each one. From the contract itself, relied upon and recognized by both parties, and from the actions of the parties and the lack of any control outside of the contract provisions in the performance of the work, the relationship was clearly that of an independent contractor.

The judgment of the district court is affirmed.

Mr. CHIEF JUSTICE HARRISON and MR. JUSTICE ANGSTMAN concur.

MR. JUSTICE ADAIR dissents.

MR. JUSTICE BOTTOMLY not participating.