No. 14217

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

ALLAN J. KOSMERL, d/b/a
AL'S ELECTRIC,

        Plaintiff and Appellant,

   -vs-

TIMOTHY C. BARBOUR and JAMES E.
NELSON, d/b/a T.J.'S POOL AND
GAME ROOM,

        Defendant and Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
               Honorable Truman Bradford, Judge presiding.

Counsel of Record:

    For Appellant:

        Graybill, Ostrem, Warner and Crotty, Great Falls,
        Montana

    For Respondent:

        Alexander, Kuenning, Miller and Ugrin, Great Falls,
        Montana

---

            Submitted on briefs: December 20, 1978

                DecidedJAN 2 1979

Filed:JAN 2 1979

Thomas J. Kearney
                       Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment on a case tried in the Eighth Judicial District Court, Cascade County, the Honorable Truman G. Bradford, sitting without a jury. Plaintiff sued on a contract for certain electrical work done on premises belonging to respondents in the amount of $1,761.25. From a judgment in favor of defendant-respondents, plaintiff appeals.

Respondents Barbour and Nelson formed a partnership and leased a building to house a business called TJ's Pool & Game Room. They employed a contractor, Gordon Sayler, to undertake remodeling necessary to transform the leased premises into space suitable for a billiard and game room business. Sayler was a general contractor who had done this type of work in several other establishments in Great Falls. During his remodeling jobs, he hires labor and subcontractors to assist him in the necessary alterations. Appellant, Allan J. Kosmerl, doing business as Al's Electric, was hired by Sayler to do the electrical work at TJ's. Testimony indicated that Sayler had previously worked with Al's Electric in other remodeling jobs and that their way of doing business was that Sayler would pay Al's at the completion of the electrical job.

During the course of remodeling Barbour, who managed the business, learned that Sayler was not making payment to his employees or subcontractors. Some of these employees threatened to walk off the job and some of the subcontractors went directly to Barbour and requested that he make payments to them. Arrangements were made to finish the job under this sort of a fiscal arrangement. Up to that time

-2-

Barbour had paid directly to Sayler a portion of the contract price. Thereafter, after talking to Sayler, Barbour made payments directly to certain individuals. Sayler stayed on the job until completion, the fiscal arrangements being made as above set forth with certain of the employees and subcontractors.

Appellant contends that, after talking to Barbour, he felt that Sayler would pay him. However, he also felt that under the arrangements Barbour had made to take over the job, that he would be included as other subcontractors were and be paid by Barbour. Barbour, on the other hand, testified and took the position that although he paid many of the subcontractors in full, appellant had agreed to look only to Sayler for payment. As a result, he did not feel responsible for work done by appellant.

Additionally, one month after the completion of all the work and nearly two and one-half months after appellant stated that he understood he would look to Barbour for payment, appellant submitted a bill to Sayler for his services. Sayler was unable to pay this and appellant now looks to Barbour and the partnership for payment.

The issues presented for review are:

1. Whether the District Court was correct in making its Finding of Fact No. 3, which read:

> "Gordon Sayler was paid all moneys he had coming under his contract with TJ's."

2. Whether the District Court was correct in making its Finding of Fact No. 4, which read:

> "Gordon Sayler hired Allan Kosmerl to do certain electric work on the premises."

3. Whether the District Court was correct in making its Finding of Fact No. 6, which read:

"That Gordon Sayler was not the agent of TJ's but an independent contractor."

4. Whether the District Court was correct in making its Finding of Fact No. 8, which read:

"That Defendant Barbour did not enter into any separate contract with Kosmerl, did not create any estoppel which would entitle him to payment but merely advised Kosmerl on one occasion that he ought to look out for his own (Kosmerl's) interest in his dealings with Gordon Sayler."

5. Whether the District Court was correct in making Conclusions of Law Nos. 1, 2 and 3, based on the above findings of fact:

"1. Nelson and Barbour, d/b/a TJ's, do not owe any money to Kosmerl for work performed under the original contract between Kosmerl and Gordon Sayler.

"2. That there is no basis in law for holding that Barbour and Nelson, d/b/a TJ's, owes any money to Kosmerl as a result of the work originally contemplated and agreed to be performed under the Kosmerl-Sayler contract.

"3. Based on the testimony of the parties, but particularly that of the defendant Barbour it is found that Barbour and Nelson, d/b/a TJ's, owes Kosmerl the sum of One Hundred Eighty and 60/100 Dollars ($180.60) based on a new and separate agreement with Kosmerl."

While five issues are set forth, the actual issue before this Court is whether the trial court's findings of fact, conclusions of law, and judgment are supported by substantial evidence. Rule 52(a), M.R.Civ.P., states in pertinent part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

This Court, in describing its function in reviewing findings of fact and conclusions of law tried by a District Court without a jury, set forth the following in Montana Farm Service Co. v. Marquart (1978), ____ Mont. ____, 578 P.2d 315, 316, 35 St.Rep. 631, 633-34:

-4-

"'. . . We have consistently held under such circumstances that this Court cannot substitute its weighing of the evidence for that of the trial court. When there is a conflict in the evidence, the findings of the trial court are presumed to be correct if supported by substantial evidence.' Sedlacek v. Ahrens (1974), 165 Mont. 479, 485, 530 P.2d 424.

"We have also held that the findings of the trial court, in a nonjury trial, will not be reversed on appeal, unless there is a clear preponderance of evidence against the findings. Keneco v. Cantrell, (1977), _____ Mont. _____, 568 P.2d 1225, 34 St.Rep. 1063 . . . "

In defining substantial evidence this Court stated in Olson v. Westfork Properties, Inc. (1976), _____ Mont. _____, 557 P.2d 821, 823, 33 St.Rep. 1133, 1136:

"Substantial evidence has been defined by this Court as such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence. The evidence may be inherently weak and still be deemed 'substantial', and one witness may be sufficient to establish the preponderance of a case. (Citations omitted.)"

Appellant acknowledges the general presumption of correctness of the above stated rules and case authority but argues the rulings made by the court here were not supported by the evidence. We have carefully reviewed each finding of fact set forth as an issue in this case and find no error.

Issue 1 is directed at Finding of Fact No. 3, in which the court found that "Gordon Sayler was paid all moneys he had coming under his contract with TJ's." Here, the contract was for the amount of $24,000 and the court correctly found Sayler had received the entire sum due under the contract. Part of the payment was in the form of materials purchased or salaries paid directly by Barbour to subcontractors and employees, done with Sayler's knowledge and consent. This does not change the fact that Sayler was fully paid for

the contract, as this was an arrangement made between Sayler and Barbour when Sayler got into financial difficulties and was threatened with a walkout by both employees and subcontractors. Barbour fully complied with his part of the terms of the valid contract and Sayler, having received all sums due him, was the sole responsible party for paying the electrical contractor's claim.

Issue 2 is directed to Finding of Fact No. 4 which found that Sayler hired Kosmerl to do the electrical work. The only dispute appellant has here concerns the conversation between Barbour and appellant concerning Sayler's inability to pay. Testimony indicates that Barbour told appellant that he did not believe Sayler would pay him and that he should make certain that he received his money. Appellant replied that he was certain he would get his money from Sayler and that there would be no problem. Appellant now argues that even if Barbour's version of that conversation is correct, the most that could be expected was that he would first try to collect from Sayler. At the time of the conversation, however, appellant understood that various people had not been paid and Barbour indicated that he (Barbour) would not be making any more payments and that appellant should make certain that he receive payment from Sayler. The evidence clearly indicates that Kosmerl looked to Sayler for payment initially and the court chose to believe Barbour's recitation of the conversation to show that he did nothing to incur responsibility for Sayler's obligations to appellant. The finding of fact of the court in this issue is correct based on the evidence.

Issue 3 is directed at Finding of Fact No. 6 which found Sayler to be an independent contractor, not an agent

of TJ's. Appellant argues there were certain isolated incidents which established the fact that the independent contractor status of Sayler ceased to exist when he became involved in the financial difficulties hereinbefore referred to. Appellant alleges that the element of control over the work shifted to Barbour at this point. However, there is no evidence of control over Sayler, his employees, or subcontractors by either Barbour or Nelson. Nor does appellant set forth any authority for his proposition that the independent contractor status of Sayler was destroyed or altered by the financial arrangements made during the construction period. This Court recently set forth the factors required in establishing an independent contractor status. In Sharp v. Hoerner-Waldorf Corp. & Aetna Casualty Ins. Co. (1978), ____ Mont. ____, 584 P.2d 1298, 1301, 35 St.Rep. 1430, 1434, the Court, in construing the Workers' Compensation provision in finding an independent status, stated:

> "Section 92-438.1(1), R.C.M. 1947, reiterates the basic test in Montana for determining independent contractor status, namely, the right of control over the person doing the work involved. 'The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer.' Kimbal v. Industrial Accident Board (1960), 138 Mont. 445, 449, 357 P.2d 688. 'The test to determine whether or not an employer-employee relationship exists . . . is the so called control test. Under that test an individual is in the service of another when that other has the right to control the details of the individual's work.' State ex rel. Ferguson v. District Court (1974), 164 Mont. 84, 88, 519 P.2d 151. Respondent has argued an employer must control the details of a performance before the performer is considered an employee. However, the determinative test is based on the right, not just the exercise, of control. Larson, Workmen's Compensation Law, Vol. 1A, Sec. 44.10, p. 8-19; Ferguson, supra."

Here, appellant admits that Barbour did not control the details or manner of his work. There was no direction as to conduct of the work. It was Sayler who was in charge of the

work and remained in charge until the completion of the job. Under these circumstances there is no question that Sayler was an independent contractor. See Kimball v. Industrial Accident Board (1960), 138 Mont. 445, 357 P.2d 688; St. Regis Paper Company v. U.C.C. of Montana (1971), 157 Mont. 548, 487 P.2d 524.

Issue No. 4 concerns Finding of Fact No. 8. The court found that Barbour did not enter into a separate contract with Kosmerl, did not create any estoppel which entitled him to payment, but merely told appellant on one occassion that he should look out for his interests in dealing with Sayler. Appellant's argument is directed to the fact that Barbour induced appellant to continue with the electric wiring and by that conversation directed the conduct of appellant's work. At best, the evidence indicates that appellant asked Barbour where certain outlets should be placed. This certainly is not directing the actual electrical supervision for the remodeling job. From the time the fiscal problems began, the evidence is clear that appellant was aware that Sayler was not making payments to his workers and that respondent would not make any more payments to Sayler. Such evidence does not show inducement on the part of Barbour to have appellant continue the work.

Issue 5 is directed at Conclusions of Law 1, 2 and 3. Appellant argues that he completed the electrical work after his conversation with Barbour and while Barbour was paying others for their work and that respondent agreed that the electrical work was well done and that the services and materials claimed on appellant's bills were performed and installed. This evidence, however, does not reflect an abuse of discretion on the part of the District Court. The

court found that respondents Barbour and Nelson had contracted with Sayler, that Sayler employed appellant and that there was no relationship or legal theory which justified holding respondents responsible for appellant's loss. Appellant's contention that he completed the work and that respondent Barbour was making payments to others has no bearing on the case. It ignores the fact that he was warned about possible nonpayment and that he told Barbour he looked to Sayler as the responsible party in paying for his services. In addition, there is no evidence indicating that Barbour ever took over the direction of the job as appellant asserts. Those statements are not supported by the record.

Appellant failed in his attempt to prove by controverted evidence that the trial court erred in its findings of fact and conclusions of law as previously set forth. The record amply supports the findings, conclusions, and judgment of the District Court and the case is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-