ALLEN, RESPONDENT, *v.* BEAR CREEK COAL CO. ET AL., APPELLANTS.

(No. 2,973.)

(Submitted April 7, 1911,   Decided April 29, 1911.)

[115 Pac. 673.]

*Personal Injuries — Master and Servant — Coal Mines — Safe Place—Contributory Negligence—Assumption of Risk—Independent Contractor—Instructions—Excessive Verdict—Complaint—Sufficiency.*

Personal Injuries—Complaint—Causal Connection—Sufficiency of Pleading.
    1.   Under the rule that whatever is necessarily implied from a statement directly made in a pleading, or is reasonably to be inferred therefrom, is to be taken as directly averred, the complaint in an action to recover damages for injuries sustained in a coal mine through the fall of rock, which, though failing to state specifically that defendant's omission to properly timber the room in which plaintiff worked was the cause of the fall, did aver insufficient timbering, a dangerous condition resulting therefrom, the fall of the rock upon plaintiff, and that defendant "by causing said rock to fall upon plaintiff" crushed and injured him, *etc.,* was sufficient in this regard; the cause of the fall, *i. e.,* defendant's negligence in failing to properly timber the place was a necessary inference from the averments made.

Pleadings—Indefiniteness—Special Demurrer.
    2.   The objection that a complaint is indefinite must be made by special demurrer.

Personal Injuries—Negligence—Pleading and Proof—Irrelevancy.
    3.   Proof of an act of negligence on the part of defendant master not pleaded in the complaint was irrelevant.

Same—Master and Servant—Coal Mines—Duty of Master—Custom—Evidence—Inadmissibility.
    4.   Though it was error to permit plaintiff's witnesses to testify that it is customary for coal mine operators to see that the places to which their employees are sent to work are first put in safe condition, it was nonprejudicial, the presumption being that the jury accepted the law as announced by the court: that it is incumbent upon the master to

exercise ordinary care and diligence to provide his servant with a reasonably safe place in which to work,—rather than as stated by the witnesses.

Same—Improper Cross-examination—Mitigation of Damages.

5.  The court properly sustained an objection to a question asked a physician on cross-examination, the purpose of which was, not to test the truth of a statement made by him on direct examination relative to the extent and character of plaintiff's injury, but to elicit evidence in mitigation of damages, to-wit, that he had offered to perform without charge the necessary surgical operation to restore plaintiff's hand to usefulness.

Same—Questions for Jury.

6.  The evidence upon the questions whether defendant was reasonably diligent in making the place in which he worked reasonably safe, whether he had been directed to work therein, and whether he was guilty of contributory negligence or assumed the risk, having been in substantial conflict, they were for the jury to determine.

Same—Safe Place to Work—Changing Conditions—Duty of Servant.

7.  Plaintiff, if directed to work in a certain room in defendant's coal mine, had a right to assume that his employer had exercised reasonable diligence to inspect and make it safe, and, though he (plaintiff) was required to observe and guard himself against such dangers as were open and obvious to his senses, he was not under any obligations to make tests by sounding the roof to ascertain whether it was loose or likely to fall.

Same.

8.  Where a place is completed, the obligation to take precautions to see that it is reasonably safe for his employee rests upon the master; where, however, changes are made in it by the former as the work progresses, the duty to make it safe rests upon him (the employee), the dangers arising from constantly changing conditions in such a place being assumed by him as incidental to his employment.

Same—Independent Contractor or Servant—How Determined.

9.  *Held,* that plaintiff, who worked under the same rules as other coal miners employed by defendant company and was required to obey the directions of its officers as to the details of his work and the means by which it was accomplished, was a servant and not an independent contractor, though he was paid a stipulated sum per ton mined by him.

Same—Instructions—Errors—Review.

10.  Under section 6746, Revised Codes, such errors in instructions as were not called to the attention of the district court at the settlement of the instructions will not be considered on appeal.

Same—Instructions—To be Considered Together.

11.  The instructions to the jury must be considered together; hence the contention that the defendant suffered prejudice because in one paragraph of its charge the court told the jury that if defendant or its officers were negligent, the plaintiff, "having exercised due care upon his part," should recover, was without merit, where in subsequent instructions the defenses of contributory negligence and assumption of risk were fully covered.

Same—Negligence—Liability of Agents.

12.  Defendant company's superintendent and mine foreman could be held liable only for their individual wrongful acts or omissions within the scope of their employment; therefore, an instruction which permitted a recovery of damages against both, without regard to whether the one or the other, or both, were guilty of the negligence alleged by plaintiff, was erroneous.

Same—Instructions—Assumption of Fact—Error.

13. Plaintiff alleged in his complaint that he was in a room in defendant's coal mine pursuant to its command at the time he was injured. Defendant averred that he was there not only without direction but in violation of one of its rules. The court instructed the jury that it was the duty of defendant to make the place reasonably safe "for its servants to be, who were ordered" to work in that place, and that "then its servants who were so ordered to go into" it had a right to assume that defendant had done its duty, etc. Held, that the instruction was prejudicially erroneous in that it assumed as proven one of the principal issues in the case, i. e., whether plaintiff was in the place in the course of his employment or not.

Same—Instructions—Law of Case—Disregard by Jury—Effect.

14. The instructions are the law of the case and binding upon the jury; hence where the plaintiff himself had testified that he had not tested the roof of the room in the coal mine in which he was injured, and the court charged the jury (though erroneously) that he could not recover if he had not done so upon entering the place and was thereafter hurt through a fall of rock, a verdict in his favor was in disregard of the instruction, necessitating a new trial.

Same—Excessive Verdict—Passion and Prejudice.

15. Plaintiff, a coal miner, was fifty-nine years of age at the time of the accident which resulted in the loss of the third finger of his right hand and the laceration of the palm in such a way as to stiffen the second finger. His earnings, with the assistance of two minor sons, had not exceeded $144 per month for some time. The jury, in arriving at a verdict of $10,000, not only disregarded uncontradicted evidence to the effect that the disabled condition of his hand was partly due to his refusal to have it treated, but also an instruction which in substance was a direction to find in favor of defendant. Held, that the verdict was so excessive as to show passion and prejudice rather than inadvertence on the part of the jury in making their estimate.

*Appeal from District Court, Carbon County; Sydney Fox, Judge.*

Action by John Allen against the Bear Creek Coal Company and others. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed and remanded.

*Mr. George W. Pierson,* and *Mr. W. W. Patterson,* submitted a brief in behalf of Appellants. *Mr. W. M. Johnston,* of counsel, argued the cause orally.

Even though there was a breach of duty on the part of the defendants in failing to sufficiently timber the room, no liability can flow from such breach of duty unless it be shown that it resulted in the injury. Hence that fact must be alleged in the pleading. Having failed to state the cause of the rock falling, the complaint does not contain "a statement of the facts con-

stituting the cause of action," if any existed. (Rev. Codes, sec. 6532; *Fearon* v. *Mullins,* 35 Mont. 232, 88 Pac. 794; *Smith* v. *Buttner,* 90 Cal. 95, 27 Pac. 29; *Hoskins* v. *Northern Pac. Ry. Co.,* 39 Mont. 394, 102 Pac. 988; *Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 373; *Burkett* v. *Griffith,* 90 Cal. 532, 25 Am. St. Rep. 151, 27 Pac. 527, 13 L. R. A. 707; *Campbell* v. *Jones,* 38 Cal. 507; *Woodward* v. *Oregon Ry. & Nav. Co.,* 18 Or. 289, 22 Pac. 1076; *McPherson* v. *Pacific Bridge Co.,* 20 Or. 486, 26 Pac. 560; Thompson on Negligence, secs. 1246, 7457, 7458; 16 Ency. of Pl. & Pr. 376; Estee's Pleadings, sec. 196.) It is not a question of what might have caused the fall of the rock, but what actually caused it. The ultimate fact, to-wit, the cause of the fall, must necessarily result from the facts pleaded. There can be no presumption as to the cause from the pleading of the existence of other facts. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Olsen* v. *Montana Ore Purchasing Co.,* 35 Mont. 400, 89 Pac. 731; *Van De Sande* v. *Hall,* 13 How. Pr. (N. Y. Sup. Ct.) 458; *Scott* v. *Robards,* 67 Mo. 289; *Malone* v. *Craig,* 22 Tex. 609; *Seligson* v. *Hobby,* 51 Tex. 147; *Rumbough* v. *Southern Improvement Co.,* 106 N. C. 461, 11 S. E. 528.) Furthermore, to state a cause of action, the complaint must also allege that the master had knowledge of the efficient cause of the injury, or, by the exercise of reasonable diligence, ought to have had such knowledge. (*Fearon* v. *Mullins, supra; Kelley* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633; *Southern Bell Tel. Co.* v. *Starnes,* 122 Ga. 602, 50 S. E. 343; *Malott* v. *Sample,* 164 Ind. 645, 74 N. E. 245; *Louisville E. & St. L. Consolidated Ry. Co.* v. *Hicks,* 11 Ind. App. 588, 37 N. E. 43, 39 N. E. 767; *Parrott* v. *New Orleans & N. E. R. Co.,* 62 Fed. 562; *Cleveland C. C. & St. L. Ry. Co.* v. *Sloan,* 11 Ind. App. 401, 39 N. E. 174; 6 Thompson on Negligence, sec. 7529; White on Personal Injuries in Mines, sec. 48.)

As the complaint was confined solely to defendants' failure to properly timber room 13, evidence of their failure to furnish plaintiff props with which to timber it was inadmissible. (*Pierce* v. *Great Falls & C. Ry. Co.,* 22 Mont. 445, 56 Pac. 867;

*Hoskins* v. *Northern Pac. Ry. Co., supra; Kelly* v. *N. P. Ry. Co.,* 35 Mont. 243, 88 Pac. 1009; *Forsell* v. *Pittsburg & Mont. Min. Co.,* 38 Mont. 403, 100 Pac. 218; *Power & Bro.* v. *Turner,* 37 Mont. 521, 540, 97 Pac. 950.)   From the above cases it follows that if proof of some ground of recovery other than the one alleged in the complaint will not support a verdict, evidence in support of such ground of recovery is immaterial and irrelevant.   (*Flaherty* v. *Butte Electric Ry. Co.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416; see, also, *Cherokee & P. Coal & Min. Co.* v. *Wilson,* 47 Kan. 460, 28 Pac. 178; *Clark* v. *Missouri Pac. Ry. Co.,* 48 Kan. 654, 29 Pac. 1138; White on Personal Injuries in Mines, sec. 47.)

It is a well-settled principle that even though the defendant is admittedly responsible for the injuries sustained, the law imposes upon the plaintiff the active duty to use all ordinary care and make all reasonable exertions to decrease the extent of the injury as much as possible, and if he does not do so, he cannot recover damages for the increased loss which might have been thus avoided.   It is for this reason that the plaintiff is entitled to recover all expenses so incurred.   (*Ashley* v. *Rocky Mt. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765; *Sweeney* v. *Montana Cent. Ry. Co.,* 19 Mont. 163, 47 Pac. 791; 1 Sutherland on Damages, sec. 88; 13 Cyc. 76, and cases cited.)   This principle has been applied to cases arising in contract and tort, and particularly to personal injury cases where it was shown that an operation would decrease the extent of the injuries.   (*Texas etc. Ry. Co.* v. *White,* 101 Fed. 928, 42 C. C. A. 86, 62 L. R. A. 90; *Owens* v. *Baltimore & O. R. Co.,* 35 Fed. 715, 1 L. R. A. 75; *City of Goshen* v. *England,* 119 Ind. 368, 21 N. E. 977, 5 L. R. A. 253; *Louisville & N. R. Co.* v. *Burke,* 46 Tenn. 45; *Strudgeon* v. *Sand Beach,* 107 Mich. 496, 65 N. W. 616.)   While defendants did not allege in their answer that the extent of plaintiff's injuries might have been lessened by an operation, it is to be noted that such an allegation is not a prerequisite to introduce evidence along that line.   (*Waxahachie* v. *Connor* (Tex. Civ. App.), 35 S. W. 692; 3 Cyc. 76, and note.)

Under the evidence, plaintiff had a contract with the defendant company to draw pillars, for which he was paid by the ton, and had his two sons working under him; he had entire charge of the work he did, and represented the master only as to the result of his work. These facts made him an independent contractor. (White on Personal Injuries in Mines, sec. 537; *Jensen* v. *Barbour*, 15 Mont. 582, 39 Pac. 906; *Poor* v. *Madison River Power Co.*, 38 Mont. 341, 99 Pac. 947; *Emmerson* v. *Fay*, 94 Va. 60, 26 S. E. 386; *Gayle* v. *Missouri Foundry etc. Co.*, 177 Mo. 427, 76 S. W. 987; 1 Thompson on Negligence, secs. 622, 629, 637; *Harris* v. *McNamara*, 67 Ala. 181, 12 South. 103; *New Albany Forge & Rolling Mill* v. *Cooper*, 131 Ind. 363, 30 N. E. 294; *City of Groesbeck* v. *Pinson*, 21 Tex. Civ. App. 44, 50 S. W. 620; *Southwestern Telegraph & Tel. Co.* v. *Paris*, 39 Tex. Civ. App. 424, 87 S. W. 724; *Merriweather* v. *Sayre Min. & Mfg. Co.*, 161 Ala. 441, 49 South. 916.) Being an independent contractor and having supervision of the work, defendants did not owe plaintiff the duty of inspection, and any danger in the roof that could have been ascertained by inspection was necessarily assumed by him as a part of his contract.

*Mr. A. C. Spencer*, and *Messrs. Meyer & Wiggenhorn*, submitted a brief in behalf of Respondent. Oral argument by *Mr. Wiggenhorn*.

Counsel for appellants cite *Fearon* v. *Mullins*, 35 Mont. 232, 88 Pac. 794, as sustaining their contention that plaintiff's complaint does not show a causal connection between the negligence of the defendants and the injury to the plaintiff. Respondent admits that "the complaint should set out facts showing wherein the danger consisted and the causal connection between the defective place and the injury," and that "not only so, but it must also allege that the master had knowledge of the efficient cause of the injury, or, by the exercise of reasonable diligence, ought to have had knowledge." (*Fearon* v. *Mullins*, 35 Mont. 236, 88 Pac. 794; 6 Thompson on Negligence, secs. 7527–7529.) Respondent contends that the citations above not only do not

support the contention of appellants, but strengthen the position of the respondent that the causal connection between the negligence of the defendants and the injury to the plaintiff should appear from the facts set forth, and a mere named allegation to that effect without the facts, as appellants contend, is insufficient. The cases of *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515, and *Olsen* v. *Montana Ore Purchasing Co.*, 35 Mont. 400, 410, 89 Pac. 731, have no application to the question contended for by appellants, and are simply authorities to sustain the proposition that there must be proof of the allegations of the complaint.

Where the facts pleaded show that the plaintiff's injury was the proximate result of the defendants' wrong, this is sufficient, without a direct averment, to show a causal connection between the negligence of defendant and the injury to plaintiff. (*Wabash etc.* v. *Pearson*, 120 Ind. 426, 16 Am. St. Rep. 325, 22 N. E. 134; *Island Coal Co.* v. *Clemmitt*, 18 Ind. App. 21, 49 N. E. 38; *Pennsylvania Co.* v. *Marion*, 104 Ind. 239, 3 N. E. 874.)

In driving tunnels, rooms, etc., in mines and creating places, after such tunnels, rooms, etc., have been completed, it is the duty of the master to keep them safe by the use of ordinary care and he must perform this duty by inspection and repair from time to time, to keep and preserve that condition. The duty to inspect and repair and keep the place safe after completion pertains exclusively to the master, and a servant who has been ordered by the master to a place of work and in going to such place must pass through completed tunnels, rooms or completed places, has the right to assume that the master has done his duty, and that such completed places are reasonably safe and free from danger. (*Thurman* v. *Pittsburgh Co.*, 41 Mont. 141–156, 108 Pac. 588; *Shaw* v. *New Year Co.*, 31 Mont. 138, 77 Pac. 515; *Kelley* v. *Cable Co.*, 7 Mont. 70, 14 Pac. 633; *Berg* v. *Boston & Mont. etc. Min. Co.*, 12 Mont. 212, 29 Pac. 545, 17 Morr. Min. Rep. 470.)

"If the evidence does not conclusively establish that the injured servant assumed the risk, the fact that the servant did not establish affirmatively that he had no knowledge of the

source of danger and therefore did not waive it will not prevent a finding that he was not chargeable with such knowledge." (6 Thompson on Negligence, sec. 7743; *Boyd* v. *Blumenthal,* 3 Penne. (Del.) 564, 52 Atl. 330; *Stucke* v. *Orleans R. Co.,* 50 La. Ann. 172, 23 South. 342.) It appears affirmatively that the plaintiff did not know of any dangerous condition of the roof, and that he had used all the necessary precautions to discover such danger, and under the rule as laid down by this court "that it is not sufficient that the plaintiff knows of the risk; he must appreciate the danger as well." (*Stewart* v. *Pittsburgh-Montana Co.* (Mont.), 111 Pac. 723; *O'Brien* v. *Corra Rock Island Co.,* 40 Mont. 212, 105 Pac. 724; *Hollingsworth* v. *Davis-Daly Estate,* 38 Mont. 143, 99 Pac. 142; *Stevens* v. *Elliot,* 36 Mont. 92, 92 Pac. 45.)

Each instruction is to be considered as a whole in the light of the pleadings and testimony. (*Lehane* v. *Butte Electric Ry. Co.,* 37 Mont. 564, 97 Pac. 1038; *Mulligan* v. *Montana Union Ry. Co.,* 19 Mont. 135, 47 Pac. 795; *Pryor* v. *City of Walkerville,* 31 Mont. 618, 79 Pac. 240; *State* v. *Fuller,* 34 Mont. 12, 85 Pac. 369, 8 L. R. A., n. s., 762, 9 Ann. Cas. 648; *Pryor* v. *Walkerville,* 31 Mont. 618, 79 Pac. 240.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by the plaintiff to recover damages for an injury suffered by him during the course of his employment by the Bear Creek Coal Company, as a coal miner. The defendant Hopka was the superintendent, having general control of the mines of the company, and defendant Fleming was the mine foreman. The complaint alleges:

"(4) That it was the duty of the said defendants, and each and all of them, on or about the 23d day of December, 1908, and at the time of the injury hereinafter complained of and more particularly described, to sufficiently timber a certain place in said mine, which said place was known as room 13 in No. 3 mine, second east entry, and it was their duty to inspect such

place at such intervals as might enable them to make the said place reasonably free from danger.

"(5) That it was the duty of the said defendants at all times to use reasonable and ordinary care to furnish this plaintiff with a reasonably safe place to work when obeying orders of said defendants.

"(6) That at the time of the grievance hereinafter complained of, and for a long time prior thereto, a condition of insufficient timbering had existed, and that said condition of insufficient timbering was either actually known to the said defendants, or by the exercise of ordinary and reasonable care the said defendants would have known of such insufficient timbering and dangerous condition; but this plaintiff says that he did not know that the said condition was dangerous, and did not know that the place where he was working was unsafe.

"(7) That on or about the 23d day of December, 1908, while this plaintiff, acting under the command of the defendants, was working in said coal mine, at the said place known as room 13, mine No. 3, second east entry, it was then and there his duty, as a servant of the said defendants, to go into said room No. 13 for the purpose of drawing or removing pillar No. 13, said pillar then and there being situated and located between what was known as room No. 13 and room No. 11, said operation of removing said pillar No. 13 being known and spoken of as 'drawing the pillar,' and the said room No. 13, the place where this plaintiff was and was about to work and was working, was unsafe by reason of insufficient timbering and want of timbering, and that by reason of the lack of timbering of said room 13 the rocks directly above the head of this plaintiff in said room 13, where said plaintiff was working, were loose and liable to fall down and crush this plaintiff at any time.

"(8) That plaintiff further says that, on or about the said 23d day of December, 1908, where he was so in and working in said room No. 13 in said unsafe and dangerous condition, a large quantity of rock weighing many tons fell upon this plaintiff, which said large quantity of rock had been negligently left in a loose, dangerous condition by reason of want of timbering,

as hereinbefore set forth, and the said defendants, by causing the said rocks to fall upon this plaintiff, thereby crushed and mashed and otherwise injured said plaintiff's right hand and arm, so that it became necessary for this plaintiff to have a portion of his said right hand amputated, and that by reason of said injury so negligently done and inflicted by the said defendants this plaintiff's said right hand has been permanently injured and rendered absolutely useless for the rest of his natural life.''

The defendants answered jointly by a general denial of negligence on their part, with allegations of assumption of risk and contributory negligence on the part of plaintiff. The trial resulted in a verdict for plaintiff for $10,000. From the judgment entered thereon, and an order denying their motion for a new trial, defendants have appealed.

1. At the commencement of the trial, defendants objected to the introduction of evidence, on the ground that the complaint fails to state a cause of action. It is argued that, while it is alleged that a large quantity of rock fell upon the plaintiff and injured him, the cause of its fall is not alleged. A complaint must contain a statement of facts constituting the cause of action, in ordinary and concise language. (Rev. Codes, sec. 6532.) The rule applicable to determine its effect, however, is that ''its allegations must be liberally construed, with a view to substantial justice between the parties.'' (Section 6566.) This rule does not permit the reading into the pleading of a statement of a necessary, substantial fact which has been omitted, so as to make it state a cause of action where none is stated (*Conrad Nat. Bank* v. *Great Northern Ry. Co.*, 24 Mont. 178, 61 Pac. 1); but it does require that whatever is necessarily [1] implied by a statement directly made, or is reasonably to be inferred therefrom, is to be taken as directly averred. (*County of Silver Bow* v. *Davies*, 40 Mont. 418, 107 Pac. 81; Phillips on Code Pleading, sec. 352; Baylies on Code Pleading, 49, 102; 31 Cyc. 80.) The complaint is not clear and direct in its statements; but we think that it is sufficient to meet the test prescribed by the statute. It is elementary that the averments

of fact must be sufficiently specific to show the causal connection between the omission of duty by the defendant and the injury complained of; that is the gist of the action. (*Fearon* v. *Mullins,* 35 Mont. 232, 88 Pac. 794; Thompson on Negligence, sec. 7467.) But a pleading comes within the rule when from the facts stated the causal connection must necessarily be inferred. There is no specific allegation that the omission to timber caused the rock to fall; yet this is a necessary inference from the allegations of the omission, the dangerous condition resulting from it, which was known to defendants, and the consequent fall, causing the injury. Besides, in paragraph 8 is found the allegation that "the said defendants, by causing the said rocks to fall upon this plaintiff," etc. This ill-expressed statement, construed with the preceding allegations, and given the meaning which the pleader evidently intended to express, *viz.,* that the omission to timber was the cause of the fall, renders the pleading sufficiently explicit.

It is also argued that the complaint is insufficient, because it is not alleged explicitly in paragraph 6 at what point in the mine the condition of insufficient timbering existed. But, when this paragraph is read in connection with paragraphs 4 and 7, it is clear that it can refer only to the place where plaintiff was working in room 13, where he was injured, and the defendants' knowledge as to the conditions there. The fault to be found [2] with this feature of the pleading is that it is indefinite, rather than insufficient. This objection to it should have been made by special demurrer.

2. Access to defendant company's mine is gained through an opening driven in on the slope of the vein, called the main entry. At right angles in both directions from this are driven side entries, which are connected at some distance from the main entry by a back entry parallel with the main entry. From the side entries, and parallel with the main entry, are driven rooms. The coal is first all removed, except pillars between the rooms, left standing to support the roof. The rooms are numbered, and the pillars take the numbers of the rooms. The roof over the spaces from which the coal has been removed is supported

by props of timber. When the vein has been exhausted, the pillars are taken out, and that portion of the mine is abandoned. The part of the pillar farthest from the entry is called the "face"; the side of the pillar is called the "rib"; and the portion of the room on that side is called the "gob." The timber props are placed in the gob in lines parallel with the rib, the line next to the rib just far enough away to permit a car track to be laid alongside of the rib. The plaintiff and his two sons were employed in mining, or "drawing," pillars and loading the coal into cars. As they removed the coal, beginning at the face, it was their duty to put in other timber supports to prevent falls of rock during the work. Timbers were furnished for this purpose by the company, through the superintendent or foreman, upon requests made to the motorman in charge of the cars. Prior to December 20, plaintiff and his two sons had been drawing pillar 9. It had appeared from the testimony of the plaintiff that Fleming, the foreman, having gone to pillar 9 and found the drawing about finished, told the plaintiff, when he had finished it, to begin work on pillar 13, stating that he would have the car track put in room 13 at once; that the work having been finished on the 22d, plaintiff ordered timbers for props to be sent into room 13; that on the morning of the 23d he and his sons went into the room in pursuance of Fleming's order to begin work, but found no timbers; that they began to prepare places for setting the timbers necessary to be put in when they began to take out coal, and that while they were so engaged a heavy fall of rock, coming from a point near the face, caught plaintiff and injured him. Robert Allen, a son, gave substantially the same testimony. During the course of his examination in chief, he gave this testimony: "Q. Now, do you know whether the requests or orders for props or timbers for your use in drawing that pillar had been given to the motorman, other than on the 22d of December, as you have testified to? A. Father told him on the 21st to bring timbers into No. 13 pillar. They had been ordered on the bulletin hanging on the mouth of the mine on the 22d." This testimony was admitted over defendants' objection that it was irrelevant. Contention

is made that the ruling was prejudicially erroneous, because the evidence tended to establish negligence not alleged in the complaint.  The evidence was irrelevant.  The question at issue was whether the defendants had used proper precautions to make safe the place into which the plaintiff had been directed to go, and not whether they had used ordinary care to provide him with the materials necessary to keep the place safe as the work progressed.  It was the duty of defendants to do both; but proof [3] of an omission of the second duty was wholly irrelevant to the inquiry as to whether they had omitted the first.  (*Forsell* v. *Pittsburgh & Mont. C. Co.*, 38 Mont. 403, 100 Pac. 218; *Flaherty* v. *Butte Electric Ry. Co.*, 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416.)  But, even so, the ruling was not prejudicial.  The witness and his father both had already stated, without objection, that timbers, though ordered in ample time, had not been furnished.  The fact that they had been ordered twice added nothing to the import of the testimony theretofore given.

The plaintiff and several other witnesses were permitted, over objection of defendants, to testify that it is the duty of mine [4] owners generally, and customary for them, to see that the places to which their employees are sent to work are first put in a safe condition.  Counsel for defendants say that the witnesses not only testified to a rule of law, but that the rule as stated by them is erroneous, in that it makes absolute safety the measure of the employer's duty.  It is not possible to understand the theory upon which the evidence was offered or admitted.  The rule of law is that it is incumbent upon the master to exercise ordinary care and diligence to provide his employee with a reasonably safe place in which to work.  (*Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131; *O'Brien* v. *Corra-Rock Island Min. Co.*, 40 Mont. 212, 105 Pac. 724.) It was incumbent upon the court to so state the law to the jury. Therefore, the inquiry whether or not coal operators generally were accustomed to perform this legal duty toward their employees could not aid the jury in determining whether defendants had neglected their duty toward the plaintiff.  The answer

to this question was to be ascertained from the facts of this case, as they were testified to by the witnesses, and not from the opinions or knowledge of witnesses as to the conditions prevalent, or a custom existing elsewhere. Indeed, the defendants sought to show that it was the rule of the company, well understood by all their employees, that no one of them was permitted to go into any room to draw a pillar, until the timbers and roof had been inspected and found to be in a safe condition, or had been put in a safe condition, either by the particular employee under the direction of the foreman, or, in case he refused to do the necessary repairs, by other employees sent in specially for that purpose. In assuming this position, the defendants recognized the measure of their duty, as they must have done in any event. While admitting that the rule was as claimed by the defendants, the plaintiff claimed that he was justified in assuming that room 13 had been inspected and put in a safe condition, because, as he and his sons stated, Fleming, the foreman, had told them when he saw them at pillar 9 on the 20th that as soon as they had completed the work there they should begin work on pillar 13. Still we do not think the evidence wrought any prejudice, because we must presume that the jury accepted the law as declared by the court, rather than as stated by the witnesses.

The evidence of plaintiff showed that in an effort to escape when the fall of rock occurred, his hand was caught between it and a prop timber, with the result that the third finger was cut off and the hand otherwise lacerated, so that the second finger was so badly drawn as to be useless. Dr. Siegfried, called to testify as to the extent and character of the injury, having [5] stated on cross-examination that the tendons were not injured, and that by a surgical operation the drawn finger could be straightened and thus restored to usefulness, was asked if he had offered to perform that operation. An objection that the question was not proper cross-examination was sustained. The offer was then made to prove that the witness had told the plaintiff that he would perform the operation without charge. An objection to the offer on the same ground was also sustained.

The ruling was correct. The purpose of the question was, not to test the truth of the statement made by the witness—the special office of cross-examination—but to bring out evidence material to the defense, that is, in mitigation of damages. For this purpose the evidence sought was material and competent. (*Sweeney* v. *Montana Central Ry. Co.*, 19 Mont. 163, 47 Pac. 791; *Ashley* v. *Rocky Mt. Bell Tel. Co.*, 25 Mont. 286, 64 Pac. 765; 1 Sutherland on Damages, sec. 88; 13 Cyc. 76; *Texas-Pac. Ry. Co.* v. *White,* 101 Fed. 928, 42 C. C. A. 86, 62 L. R. A. 90; *City of Goshen* v. *England,* 119 Ind. 368, 21 N. E. 977, 5 L. R. A. 253.) And this was the view entertained by the trial court; for the witness, recalled later by the defendants, was permitted to testify that he had advised the operation, but that plaintiff refused to have him perform it. Other rulings of the court upon questions of evidence are assigned as error, but we find none of them of sufficient importance to demand special notice.

3. It is argued that the evidence is insufficient to justify the verdict. It is said that it fails to show any violation of duty on the part of the defendants, and does show that plaintiff was either guilty of contributory negligence, or assumed the risk. [6] As is usual in such cases, the evidence is not harmonious. The point at which the plaintiff was working at the time of the accident, as described above, was the face of the pillar. The testimony of plaintiff and his sons tended to show that they went to work at pillar 13, because they were ordered to do so by Fleming on December 20; that, being an experienced miner, the plaintiff knew that the place, not having been in use for some time, was dangerous; that he made no examination of the roof, except a visual inspection of it; that it appeared smooth and solid; that he directed his sons to clean the dirt from the floor in order to get it ready for props, which were necessary to support the roof when they began to remove the coal, and that he was engaged in superintending this work when the fall occurred. It tended also to show that, if props had been put in place before the plaintiff entered the room, the fall would not have occurred. The evidence on the part of the defendants tended to show that plaintiff had not been directed by Fleming to go

into room 13; that he knew of the rule, already mentioned, that no employee was allowed to go into an abandoned room to work, unless he was accompanied by the foreman or superintendent, and its condition ascertained and provision for its safety made; that it was not practicable to timber at the particular place where the fall of rock occurred, owing to the fact that, if timbers were put in, cars could not be gotten in to haul out the coal, and that the only way to render the place safe was by taking out such portions of the roof as, upon a test of them by sounding, appeared to be loose and ready to fall. One witness testified that a short time after the accident the plaintiff had stated that he himself had caused the fall of the rock by putting his pick into a crack which he had observed in it, to ascertain whether it was loose. This statement the plaintiff denied.

Upon this condition of the evidence, it was for the jury to determine whether the plaintiff had been directed to work in room 13; whether the defendants were thereupon reasonably diligent in taking the proper precautions to make it safe; whether, under the circumstances, the plaintiff was guilty of contributory negligence, or assumed the risk; and finally whether he caused the fall of rock by his own negligence.

Accepting plaintiff's story as true, he was justified in assuming that, having been ordered to go to work in room 13, the [7] defendants had in the meantime been reasonably diligent in making such inspection of it and such additions to the timbering as were necessary to guard his safety. Acting upon this assumption, though he was bound to observe, and protect himself against, such dangers as were open and obvious to his senses, he was not under obligations to make tests by sounding the roof to ascertain whether it was loose and likely to fall. (*Schroder* v. *Montana Iron Works*, 38 Mont. 474, 100 Pac. 619; *Thurman* v. *Pittsburg & Mont. C. Co.*, 41 Mont. 141, 108 Pac. 588.) The room as it was when he began work was a completed place. The obligation to take precautions to see that it [8] was reasonably safe when he went into it was upon the defendants. The duty to make it safe as the work wrought changes in it from time to time rested upon him; for the dangers

arising from the constantly changing conditions he assumed as incidental to his employment. (*Kelley* v. *Fourth of July M. Co.,* 16 Mont. 484, 41 Pac. 273; *Thurman* v. *Pittsburg & Montana C. Co., supra; Shaw* v. *New Year Gold M. Co.,* 31 Mont. 138, 77 Pac. 515; *Friel* v. *Kimberly-Montana G. M. Co.,* 34 Mont. 54, 85 Pac. 734.)

It is argued that the evidence tends to show that the plaintiff was working, not as a servant of the company, but as an independent contractor, and hence that, since defendants owed him no duty as their servant, the evidence is insufficient to justify the verdict. There is no merit in this contention. The relation of the parties under a contract of employment is determined by an answer to the question: Does the employee in doing the work submit himself to the direction of the employer, both as to the details of it and the means by which it is accomplished? If he does, he is a servant, and not an independent contractor. If, on the other hand, the employee has contracted to do a piece of work, furnishing his own means and executing it according to his own ideas, in pursuance of a plan previously given him by the employer, without being subject to the orders of the latter as to detail, he is an independent contractor. (1 Shearman & Redfield on Negligence, secs. 164, 165; *Poor* v. *Madison River Power Co.,* 38 Mont. 341, 99 Pac. 947; *Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906.) It appears that the plaintiff and his sons were employed to draw pillars, at seventy-five cents per ton. The sons being under age were not permitted to work, except under supervision of the father. The three, however, worked under the same rules and subject to the same control as the other miners. They were required to obey these rules and the directions of their superior officers; for, according to the evidence introduced by the defendants heretofore referred to, they were not permitted to go into a new place to work, until it had been inspected and put in a safe condition. Under these circumstances the plaintiff was a servant, and not an independent contractor. The stipulated price of seventy-five cents per ton was a mere means or standard for fixing the amount of his compensation. The compensation

of all other miners employed was fixed according to the same standard.

4. Contention is made that the court erred in many particulars in its instructions. Upon a comparison of the objections now urged, however, with those specified at the time of [10] the settlement of the instructions at the trial, we find that few, if any, of them were then called to the attention of the trial court, as provided by the statute. Such as were not so called to its attention may not be noticed. (Rev. Codes, sec. 6746.)

It is said that the first instruction was erroneous, in that it failed to submit to the jury the question whether the plaintiff assumed the risk, or was guilty of contributory negligence. The instruction told the jury, in substance, that if they found by a preponderance of the evidence that plaintiff was in the employment of the defendant company, that his injury was the result of a fall of rock, as alleged in the complaint, and that the fall was occasioned by the negligence or the want of care by the defendant, or any of its officers, the plaintiff having exercised "due care" upon his part, they must find the issues for the plaintiff. It is true that the plaintiff was not entitled to recover, if he was chargeable with negligence contributing directly to his injury, or if he assumed the risks incidental to the work he was engaged in. Nevertheless the court could not in a single paragraph cover every phase of the case. Nor is it to be presumed that the jury disregarded the subsequent instructions dealing with these defenses, and the [11] protection to which defendants were entitled under them. Construed together, the charge as a whole, in so far as the objection now urged affects it, fully covered those defenses and defined the duty of the jury in considering the evidence adduced in support of them.

It will be noticed that the instruction permits a recovery [12] against both Fleming and Hopka, without regard to whether the one or the other, or both, were guilty of the negligence alleged. Though both were employed by the company, both could not be held liable, unless they were jointly guilty of

negligence resulting in plaintiff's injury; nor could either be held, except for his own personal wrong. The company, if liable at all, is chargeable upon the principle of the maxim, *"respondeat superior."* These defendants, its agents, can be held only for their individual wrongful acts or omissions within the scope of their employment. This objection was not urged at the time of the settlement of the instructions. Attention is called to it, however, because a new trial must be directed for errors hereafter stated.

Instruction No. 2 reads as follows: "If you find by a preponderance of the evidence in this case that it was the duty of the Bear Creek Coal Company, through its officers, to sufficiently timber room No. 13 described in the complaint, so as to make it reasonably safe for a passageway and place for its servants to be, who were ordered to and were engaged in drawing the pillar between room No. 13 and room No. 11, then its servants who were so ordered to go into room No. 13, for the purpose of drawing said pillar, and were engaged in, or about to be engaged in, removing said pillar, had the right to assume the master had done his duty in placing said room in a reasonably safe condition, and if you further find by a preponderance of the evidence that said room No. 13 was not in such reasonably safe condition, and that the plaintiff was thereby injured, without fault or neglect on his part, then you must find for the plaintiff in damages, not to exceed, however, the sum of $25,000." The objection is made that this instruction assumes that plaintiff was ordered to go to work in room 13, and that he was there in the discharge of his duty at the time he was injured. Paragraph 7 of the complaint alleges that it was the duty of the plaintiff to go into room 13 while working under the command of the defendants. This is denied by the answer, and the defendants endeavored to show by their evidence that the plaintiff went into this room without direction, and in violation of a rule of the company, as heretofore pointed out. [13] In order to recover, it was incumbent upon him to show by a preponderance of the evidence that he was there in the course of his employment. Otherwise the defendants were un-

der no obligation to take precautions for his safety. The court in this instruction assumed this fact as proven, and thus took from the jury the principal issue in the case, which it was their exclusive province to try and determine. For this error the defendants are entitled to a new trial.

5. Defendants contend that the verdict is contrary to the law as declared in instruction 10, as follows: "The law required John Allen to use his natural faculties. Whatever he might have seen or discovered, exercising reasonable and ordinary care, he is supposed to have known. If he had an opportunity to ascertain whether the ground which fell on him was loose, his duty would not permit him blindly to venture under it without investigation. He was required to use his ordinary senses in places of danger, such as ground in a room that had not been worked for a considerable period, and if he failed to do so, and was injured by reason thereof, he cannot recover, even though you find the defendant had been negligent in not properly securing the ground; and if you believe plaintiff entered room 13 without sounding the roof and remained under the rock which fell upon him, or did not retire a safe distance therefrom, then he cannot recover in this action."

The plaintiff stated in his testimony that when he went to room 13 he merely looked at the roof, and, having observed that it was smooth and solid, set his sons to prepare the ground for the props necessary to be put in, and that he was directing them when the fall occurred. He stated distinctly that he did not sound the roof. As the account given by plaintiff and his sons was the only evidence showing the circumstances surrounding the accident, the jury must have believed them in order to [14] reach the verdict for the plaintiff. This being so, the evidence is directly contrary to the law as declared in the instruction. The question whether in such a case a verdict, though justified by the evidence under other instructions, should be allowed to stand was discussed in the early case of *Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714. It was held that, though the instruction in question was erroneous, this court would not permit the verdict to stand, but would set

it aside and direct a new trial.  The principle involved is that, except in prosecutions for libel, wherein the jury, "under the direction of the court, shall determine the law and the facts" (Const., Art. III, sec. 10), the court shall declare the law, and the jury shall determine the facts.  The rule declared in that case has since been observed by this court.  (*State* v. *Dickinson,* 21 Mont. 595, 55 Pac. 539; *King* v. *Lincoln,* 26 Mont. 157, 66 Pac. 836; *McAllister* v. *Rocky Fork Coal Co.,* 31 Mont. 359, 78 Pac. 595.)  The instructions are the law of the case.  The jury are bound to obey them; otherwise they must be regarded as the judges of the law, as well as of the facts, in all cases, with the result that the distinct functions of the court and jury are confused and destroyed.

It may be conceded that, as applied to the facts in this case, the instruction in question is fundamentally wrong, but this is not important; for, as was said in *King* v. *Lincoln, supra:* "A verdict found in disregard of the authoritative declaration of the court, made for their [the jury's] guidance, cannot be permitted to stand, whether the law thus declared be right or wrong."  It was also held that the instruction would not be examined with a view of determining its correctness in point of law, but that a new trial would be ordered.

6. Finally, it is said that it is apparent from the record that the jury were influenced by passion and prejudice in award-ing a verdict in the amount found by them.  This contention [15]  must also be sustained.  The plaintiff at the time of the accident was fifty-nine years of age.  His injury consisted in the loss of the third finger and a laceration of the palm of his hand to such an extent that the second finger was drawn and stiffened.  As already stated, the physician who attended him testified that the tendons were intact, and that by a simple surgical operation the finger could be straightened, and the hand restored to comparative usefulness.  This testimony is not contradicted.  Nor is it controverted that, though plaintiff had the opportunity to have the operation performed, he refused to improve it.  It is not definitely shown what his earning

capacity was prior to the injury; but it does appear that the gross earnings of himself and his two sons, for mining coal at the price of seventy-five cents per ton, had not during any one month, for several months, amounted to more than $144. We shall not attempt a discussion of the cases in which excessive verdicts have been considered, or those in which a just result has been reached by scaling the award of the jury. In *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439, a verdict for $10,000, for an injury to the left hand of a boy thirteen years of age, was reduced to $4,000. This was done because, taking into consideration all the circumstances, we were of the opinion that the plaintiff was entitled to recover, and that this amount would compensate him for the pain suffered and the impairment of his hand. In this case, however, though the evidence is sufficient to go to the jury, we think the excessive award was due to passion and prejudice, rather than to an inadvertence of the jury in making their estimate. We think this is apparent from the fact that the uncontradicted evidence tends to show that the disabled condition of plaintiff's hand is due in part to his obstinate refusal to have it treated, as well as from the fact that under instruction No. 10 the jury were bound to have found for the defendants in any event. Their apparent disregard of the evidence referred to, coupled with a disregard of the instruction, which was tantamount to a direction of a verdict for the defendants, shows an apparent determination on their part to find a verdict for the plaintiff, without regard to the evidence.

Other questions are argued in the briefs; but what has already been said is sufficient to guide the court in a retrial of the case.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.