KING v. BRENHAM AUTOMOBILE CO.

(Court of Civil Appeals of Texas. San Antonio. Feb. 21, 1912. Rehearing Denied March 20, 1912.)

1. MUNICIPAL CORPORATIONS (§ 705*)—USE OF STREETS—AUTOMOBILE ACCIDENT—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to plaintiff in a collision with an automobile, an instruction that plaintiff could not recover if guilty of contributory negligence, though the driver of the machine discovered plaintiff's danger in time to have avoided the injury by the use of the means at his command, was erroneous.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

2. MASTER AND SERVANT (§ 316*) — AUTOMOBILE OPERATOR—INDEPENDENT CONTRACTOR.

Where defendant corporation was engaged in the business of carrying passengers with automobiles, and had several cars about the streets in charge of young men, whose duty it was to operate the cars for hire, that they were given control of the machines and paid 20 per cent. of their receipts, gasoline and lights being furnished by defendant, did not make the operators independent contractors, so as to relieve defendant from liability for their negligence; such facts being sufficient prima facie to create the relation of master and servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242, 1243; Dec. Dig. § 316.*]

Appeal from Washington County Court; Ed. R. Sinks, Judge.

Action by S. S. King against the Brenham Autombile Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Mathis & Teague, for appellant. Buchanan & Stone, for appellee.

FLY, J. This is a suit for damages instituted by appellant against appellee, in which it is alleged that appellee is a common carrier of passengers, for hire, in automobiles, and that on November 5, 1910, while appellant was driving in his buggy along the streets of Brenham, Tex., at night, one of the cars of appellee, which was being operated by an employé of appellee at a fast, reckless, and dangerous rate of speed, collided with and destroyed his buggy, throwing appellant against the front end of the car and inflicting serious and permanent injuries. It was further alleged that appellant was driving a mule, which became frightened and turned the buggy completely around, and ran towards the swiftly approaching automobile, and appellant called to the driver to stop the car, but he disregarded it and ran into the buggy; that the driver saw appellant and could have avoided the collision. It was also alleged that the automobile was not properly lighted, and that the car was greatly exceeding the rate of speed of four miles fixed by ordinance of the city council of Brenham. Appellee filed general and special exceptions, and answered that it was "engaged in the business of renting, hiring, and contracting out to independent contractors automobiles for hire," and had no control or authority over the driver, Ed Pfloughaupt, who was operating the car on the night of the accident, but that he was an independent contractor, and that appellant was guilty of contributory negligence. The cause was tried by jury, and resulted in a verdict and judgment in favor of appellee.

[1] The first assignment complains of the sixth paragraph of the charge, because it instructed the jury that appellant could not recover if he was guilty of contributory negligence, although the driver of the car discovered his danger in time to have avoided the injury by the use of the means at his command. The charge is as follows: "Now, if you believe from the preponderance of the evidence that the defendant company was, on the 5th day of November, A. D. 1910, operating one of its automobiles in the city of Brenham, Washington county, Texas, and that Ed Pfloughaupt, who was driving such automobile, was, at the time, a servant and employé of the defendant company, and that while so operating the same such automobile struck the plaintiff, and thereby injured him, and you further believe from the preponderance of the evidence that said automobile was running at a greater rate of speed than eight miles an hour, or that the same was inadequately lighted, or if you believe from the evidence that the driver operating said automobile discovered the danger, if any, of plaintiff in time to have avoided the injury by the use of all of the means at his command to have stopped the same, and that, had he used all of the means at his command to stop the same, after the discovery of the danger of plaintiff, if any, the injury would have occurred, or if you believe from the evidence that by keeping a proper lookout he could have discovered the danger of the plaintiff, if any, in time to have stopped the automobile in time to have avoided the injury, and that such failure to so discover him, if any, was negligence on his part, and if you believe that the negligence, if any, in any of the above matters was the proximate cause of the injury, if any, and you do not find from the evidence that the plaintiff was guilty of contributory negligence as hereinafter charged, then you will find a verdict for the plaintiff, and assess his damages as hereinafter charged."

The charge is open to the attack made upon it; for the court, after disjunctively stating the circumstances under which appellant should recover, qualifies each one by stating, "if you do not find from the evidence that plaintiff was guilty of contributory negligence." The charge was clearly erroneous. The rule, as laid down in all text-books and reports of decisions, is that,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

even though a person may be guilty of negligence in placing himself in a position of danger, still, if his peril is discovered by the party from whom he is in peril in time, by the use of means at his command, to prevent the injury, the latter will be liable in spite of the contributory negligence of the injured person. A man does not become an outlaw, with the brand of Cain upon him, and whom "every one that findeth" him may slay, because he disregards his safety and puts himself in the way of danger. The persons and lives of human beings are held in too high esteem by the laws of every civilized community to permit automobiles and other vehicles to be recklessly and willfully run over them and mutilate or destroy them, and then permit the guilty parties to escape punishment by the plea that the victim got in the way of the vehicle. From the earliest adjudicated case of discovered peril to the case of Railway v. Hodges, 102 Tex. 524, 120 S. W. 848, the rule has been that if a party, operating a locomotive on a railway track, discovers the danger of a person on the track, he ought to stop the engine, if possible. The same law applies to motor cars that, under our modern civilization, throng the streets, and are a constant menace, if not operated in a careful manner, and with due regard for the protection of those who, in the exercise of their rights and privileges, may be using the streets. The rule is thus formulated in Railway v. Staggs, 90 Tex. 458, 39 S. W. 295: "If the deceased was negligent to that degree denominated 'contributory negligence,' but the employés of the railroad company actually knew of his danger in time to have averted it, and they failed to use every means in their power, consistent with safety, to prevent the injury, the railroad company would be liable, notwithstanding the negligence of the deceased." The same law applies with equal vigor to automobiles, which, by their extended use on roads and streets, menace more people than railroad trains which can only move on prescribed tracks.

[2] The evidence showed that appellee was a private corporation, engaged in the business of carriers of passengers with automobiles, and had several cars running on the day of the accident, and they were being driven by boys, who were getting 20 per cent. of what the automobiles earned for their pay for driving. All the cars were kept in the garage owned by the company, and the latter furnished the lights and gasoline; but, according to the testimony of the president and manager of the company, the automobile in question had been placed in the exclusive possession and control of a 17 year old boy, who was in the habit of running along the streets of Brenham at the rate of 16 miles an hour, in defiance of an ordinance, and is claiming immunity from damages for injuring a man driving along the streets, because the boy was an independent contractor. The plan adopted with the boy in question is the same adopted with all the other boys in the employment of the company, and they are given free rein with the cars, and the president testified: "Didn't make any difference whether he drove 40 miles or 80 miles; when I turned the machine over to him, I thought he had sense enough to know how to drive." It is very significant that the marvelous contract made with the boy driver was entered into just a week before the accident.

Taking for granted the truth of the statements made by the officers of the company, we are of the opinion that a corporation, chartered for certain purposes, cannot evade its responsibility to the general public by delegating its authority to others, whether responsible or irresponsible. Not only was the corporation given existence for certain purposes, but in addition the state of Texas has required that the owners of automobiles or motor vehicles shall, before using such vehicles or machines upon public roads, streets, or driveways, obtain a license and procure a number for each car, which shall be in figures not less than six inches in height, and display it in a conspicuous place on the machine. The object of that law is for the identification of the owner and to fix the liability in case of accidents or violations of law; and if a person or corporation could escape liability by leasing or renting cars to drivers on a percentage basis the law fails. Acts of 1907, p. 193. As said in Babbitt on Motor Vehicles (section 56): "One of the principal purposes of motor vehicle legislation is identification of the vehicle and of the operator, in case of accident; and another is that the knowledge that means of detection are always available may act as a deterrent from lax observance of the law and of the rules of conservative and safe operation. Whatever purpose there may be in these statutes, it is subordinate at the last to the primary purpose of rendering it certain that the violator of the law or of the rules of safety shall not escape because of lack of means to discover him." The purpose of the statute is thwarted, and the displayed number becomes "a snare and delusion," if courts would entertain such defenses as that put forward by appellee in this case. No responsible person or corporation could be held liable for the most outrageous acts of negligence, if they should be allowed to place a "middleman" between them and the public, and escape liability by the manner in which they recompense their servants.

If the contract between the 17 year old boy and the corporation is as sworn to by the officers, still it does not make him an independent contractor and relieve appellee of liability for his acts. The facts that he is operating a car owned by appellee,

kept by appellee in its garage, that the lights and gasoline necessary to run the car are furnished by appellee, that appellee gets the larger part of the money earned by the car, tend to establish the relation of master and servant. Because the driver was to receive 20 per cent. of the earnings tends to prove that this mode of pay was established to offer an incentive to seek for and obtain passengers for the car, rather than to show that the chauffeur was an independent contractor.

That the owner of automobiles, engaged in transporting passengers, should have given absolute control of his cars to irresponsible minors, without power or ability to control their actions in any way, not even if they refused to carry passengers, so as to make money for the owner, and not even if they ran the cars through the streets at the rate of 80 miles an hour, is almost inconceivable, if sanity and businesslike methods are taken into consideration; but if such an outrageous contract was made the corporation cannot thereby shift its responsibility to irresponsible shoulders, but must answer for the negligence of those to whom it has intrusted its property. The rights of those using the streets, the enforcement of law and order, and public policy would unite in discountenancing and denouncing such a transparent attempt to avoid the consequences of negligence.

The judgment is reversed, and the cause remanded.