## NATIONAL CASH REGISTER CO. et al. v. RIDER. (No. 3626.)

Court of Civil Appeals of Texas. Texarkana.
Jan. 21, 1929.

Rehearing Denied Feb. 7, 1929.

Thomas G. Pollard, of Tyler, and Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellants.

T. B. Ramey, Jr., of Tyler, for appellee.

HODGES, J. This suit was filed by the appellee, Rider, against the appellants to recover damages for injuries to his person and property resulting from a collision between appellee's wagon and an automobile driven by appellant Weeks. According to the averments of the amended original petition, the collision occurred on the night of November 28, 1927, on one of the streets of the city of Tyler. Appellee, with others, was riding in his wagon drawn by a pair of mules, traveling in an easterly direction. Appellant A. S. Weeks, who, it is alleged, was an employee of the National Cash Register Company, was driving in a westerly direction at the same time on the same highway The two vehicles collided, resulting in the killing of one of the appellee's mules, damages to his wagon, and physical injuries to the appellee. The negligence charged and submitted as issues to the jury is that the appellant Weeks was driving at a rate of speed in excess of 20 miles per hour; that he passed plaintiff's wagon at a dangerous rate of speed; that he failed to yield to plaintiff's wagon one-half of the street in passing; that he was driving on the wrong side of the street; and that he failed to keep a proper lookout. The appellants answered by a general demurrer, general denial, and specially pleaded contributory negligence, alleging that the wagon was driven by one Jack Green under the direction and control of the appellee; that Green was guilty of negligence in driving on the wrong or left-hand side of the street and in failing to keep a lookout.

The case was submitted on special issues, in answer to which the jury found as follows: (1) That the defendant Weeks was driving at a rate of speed in excess of 20 miles per hour; (2) that he was driving at such a rate of speed as to endanger the lives and limbs of other persons; (3) that he did not keep the car he was operating on the right-hand side of the road; (4) that he failed to keep a lookout for the approach of other vehicles going in the opposite direction; (5) that each of said acts of negligence was a proximate cause of plaintiff's damages. The jury found against the appellants on the allegations of contributory negligence, and fixed the amount of the appellee's damage at $2,700.

Under the first and second errors assigned appellants complain of the refusal of the court to instruct the jury to return a verdict in favor of the National Cash Register Company. Those assignments are based upon the proposition that the evidence was not sufficient to support a finding that Weeks was an employee of that company. Weeks, who was the only witness who testified as to his relations with the company, said:

"I am an employee of the National Cash Register Company, and have been for nearly three years, in the capacity of salesman. I was so employed on the 28th day of November, 1927. On the occasion of this injury I had been to Henderson, Texas, in pursuit of my business as salesman for the National Cash Register Company. I had been over there to sell a cash register, and was coming back to my home in Tyler at the time this collision occurred."

The testimony shows that the automobile which Weeks was driving at the time of the collision with the wagon had on it the sign "National Cash Register Company." Weeks further testified:

"I was sent here by the National Cash Register Company in their employment. Instead of being on a straight salary they put me on a commission, and I had a drawing-account. Well, as far as being sent there, it was optional. I could have come here, or I didn't have to. I could come here or go some other

place for the company. I had other territory, and they asked me if I would take this, and I accepted after consideration. This territory was the territory designated and prescribed by the National Cash Register Company for me to work in as their salesman. I didn't have any other line of business except selling National Cash Registers, except supplies and service and credit files for bookkeeping, etc. The machines I sold and the service were subject to their fulfilment of the order by the National Cash Register Company. The supplies was my own personal business. I bought them and in turn sold them. But as far as the sale of the machines was concerned, that was subject to confirmation by the National Cash Register Company. I was on that business the day this accident happened. I had been over to Henderson to sell a cash register that day, and was returning home. I sold three cash registers that day. * * * There is one thing I might add: If I leave the territory I must inform the company. For instance, if I should go to Houston on a pleasure trip, or take a vacation, I am to inform the company. But while I am in the territory, any place I choose to go it is my own business."

We think the state of the evidence was such that the court was justified in concluding that Weeks was an employee of the National Cash Register Company, and not an independent contractor. The following cases support that conclusion: U. S. Fidelity & Guar. Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; King v. Galloway (Tex. Com. App.) 284 S. W. 942; Jensen v. Barbour, 15 Mont. 582, 39 P. 906; Maryland Casualty Co. v. Kent (Tex. Com. App.) 3 S.W.(2d) 414; King v. Brenham Automobile Co. (Tex. Civ. App.) 145 S. W. 279. The proof shows that Weeks was rendering personal services to his company; that those services were continuous for an indefinite period of time, and did not end with the completion of any particular job or enterprise. The nature of his employment was such that Weeks was naturally expected to devote practically all of his time to selling cash registers. The value of those services would depend largely upon the number of machines he sold. Apparently there was no limit to the number he might sell. The fact that he received his compensation in commissions instead of a salary does not materially alter his relations, so far as the questions here involved are concerned.

In connection with the special issues submitted, the appellants requested the court to submit the following:

"Was the accident in question an unavoidable accident as that term has been defined to you?"

In connection with that interrogatory, the court was requested to define "unavoidable accident." The refusal of the court to submit that issue is assigned as error. The testimony as to the position of the wagon when struck is conflicting. Weeks testified that he kept his car to his right, or the north, side of the street, and that the collision was caused by the wagon being on that side. Appellee and his witnesses testified to the contrary. They stated that the wagon was on the south side of the street, and that the automobile was turned in that direction, and that is why the collision occurred. In answer to a special interrogatory, the jury found that the wagon, when struck, was on the south side of the street. If the testimony of the appellee and his witnesses be true, and the finding of the jury be correct, the collision was directly caused by the car being on the wrong side of the street. It is exceedingly improbable, if the issue of unavoidable accident had been submitted, as requested, that the jury would have answered favorable to the appellants. Such an answer would have been in conflict with answers previously given to other interrogatories.

There was no error in the court's definitions of negligence and proximate cause. Under the facts of this case, we think the court might well have omitted any definition of proximate cause without injury to the appellants.

Upon the issue of damages the court instructed the jury as follows:

"To aid you in answering question 18, you are instructed that you will take into consideration the nature and extent of the plaintiff's injuries to his person; the diminution, if any, of his ability to labor and earn money; any pain and mental suffering, if any, that the evidence may show he has sustained and will hereafter sustain as a proximate result of the collision in question; the reasonable cash market value of the mule killed, and the damage, if any, to the wagon in question; and, therefrom you will determine and ascertain what amount if paid now in cash will fairly compensate the plaintiff for such injury and damage, if any, and make such sum your answer to question 18."

The verdict was for a gross amount of $2,700. There is therefore no method for determining how much the jury allowed for any one of the different items of damage. There is no complaint that the verdict of the jury is excessive.

The evidence fully warranted a recovery upon all the issues submitted. The judgment will therefore be affirmed.

### On Motion for Rehearing.

In their motion for a rehearing, appellants contend that, because the issue as to whether or not Weeks was the agent of the National Cash Register Company and acting in that capacity at the time the collision occurred was not submitted to a jury, the court had no authority to assume the existence of such agency and render a judgment against the National Cash Register Company. As supporting that proposition the case of Norwich Union Ins. Co.

v. Chancellor (Tex. Com. App.) 5 S.W.(2d) 494, and cases there cited, are referred to. It is true the liability of the National Cash Register Company in this suit depended upon proof of the agency of Weeks at the time the collision occurred, and it devolved upon the plaintiff to prove that fact in order to authorize a recovery by him against the National Cash Register Company. But the testimony upon that issue was uncontradicted and so plain that the court had a right to assume as a matter of law that such agency existed. That fact was not disputed in the testimony. The appellants, defendants below, filed a joint answer which consisted of general demurrer, a general denial, special denial of the negligence of Weeks, and charges of contributory negligence on the part of the plaintiff in the suit. We do not think the rule announced in the case referred to is applicable.

The motion is overruled.