No. 80-55

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

GENERAL ELECTRIC SUPPLY COMPANY,
Division of General Electric Co.,
A Corporation,

       Plaintiff and Respondent,

  vs.

MONTANA AUTOMOBILE ASSOCIATION, a
corporation; BRUCE D. JAMISON, d/b/a
JAMISON CONSTRUCTION, et al.,

       Defendants and Appellants.

---

Appeal from: District Court of the Thirteenth Judicial District,
      In and for the County of Yellowstone.
      Honorable Charles Luedke, Judge presiding.

Counsel of Record:

  For Appellants:

    Joseph P. Hennessey argued and Larry Grubbs, argued,
     Billings, Montana
    Harrison, Loendorf & Poston, Helena, Montana

  For Respondent:

    Fred Dugan argued, Billings, Montana

---

        Submitted: September 15, 1980

         Decided: **SEP 30 1980**

Filed: **SEP 30 1980**

*Thomas J. Kearney*

_____
        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The defendant Montana Automobile Association (MAA) appeals from a judgment entered in District Court following a nonjury trial. The district judge found that the plaintiff was entitled to recover $2,956.80, plus costs and attorney fees in a lien foreclosure.

Defendant MAA contracted with Jamison Construction (contractor) to erect a building on MAA's real property in Billings, Montana. During the fall of 1977, the now bankrupt subcontractor Clawson purchased electrical materials on open account from the plaintiff General Electric Supply Company (GE) for the MAA job. Clawson already owed GE a large sum of money for materials purchased during the summer of 1977 for other jobs, but the amount was not yet such as to alarm GE. But by December 1977, GE became concerned about Clawson's now overdue accounts. GE contacted Clawson by phone to make arrangements with him to pay at least $37,749.69 on his account of over $100,000, or GE threatened to stop extending credit. On December 29, 1977, at the time that Clawson was paid for the MAA job by the contractor, Clawson made the payment of $37,749.69 on his GE account. GE applied this check to the past due accounts of $37,749.69, and did not apply it to the accounts reflecting materials purchased for the MAA job--none of which were past due at that time. Appellant contends that this application of funds was contrary to Clawson's instructions.

In February 1978, GE filed a materialman's lien against MAA for failure to pay for the electrical supplies. Suit was later brought to enforce the lien, and judgment was entered in favor of GE. We affirm.

The issues presented to this Court for purposes of appeal all relate to one central question: Did the District Court err in finding that a valid lien existed against MAA?

Both parties to this action agree that if the materials

- 2 -

used in the construction of the MAA building were supplied by GE but were not paid for that GE has a valid basis for a lien. But, appellants contend that GE was notified that Clawson's payment to GE was to be applied to the MAA account; therefore the MAA debt should be considered as having been paid. 60 Am Jur 2d Payment §§ 81, 82; Monidah Trust v. Hruze (1922), 62 Mont. 444, 449, 205 P. 232, 233-234.

A creditor is bound by the instructions given to him by the debtor as to the application of a payment. Section 28-1-1106, MCA, sets out the creditor's duties:

> "Application of performance when there are several obligations. Whenever a debtor under several obligations to another does an act by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:
>
> "(1) If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be so applied.
>
> "(2) If no such intention or desire is then manifested, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation performance of which was due to him from the debtor at the time of such performance . . ."

In order to find that the creditor (GE) erred in applying Clawson's payment to the past due accounts, then, it was necessary for the District Court to find that Clawson "manifested" his "intention or desire" to GE that the $37,749.69 payment be applied to the MAA account. Clawson contends that GE knew or should have known how the check was to be applied.

Based on the evidence presented at trial, the district judge found that materials valued at $2,956.80 were supplied to MAA, and that the notice to the creditor as to payment was not sufficient to deem the MAA account paid. These findings must be presumed to be correct and will not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P. A review of the evidence

shows some conflict, but this Court will not

> "'substitute its weighing of the evidence for that of the trial court. When there is a conflict in the evidence, the findings of the trial court are presumed to be correct if sup- ported by substantial evidence.'" Kosmerl v. Barbour (1979), ____Mont.____, 589 P.2d 1017, 1019, 36 St.Rep. 210, 213.

The evidence at trial on the question of notice came pri- marily from GE's principal witness Mr. Resch, and from Mr. Clawson. Resch, a credit and collection specialist for GE in Salt Lake City testified that GE routinely follows instructions from a debtor as to the application of funds. If no special instructions are given by the debtor, GE normally deletes the oldest account items first. He testified to such a procedure in this case. In December 1977, Resch contacted Clawson by phone about his past due account--none of which was MAA related. At that time, $37,749.69 was 90-120 days in arrears on an account total of over $100,000. Resch's testimony was that Clawson gave him no instructions on the phone as to application of his next payment, nor did Resch ever receive any instructions from the GE employees in Billings. Clawson testified otherwise:

> "Q. And do you recall the discussions you had with Mr. Resch concerning your account during that general area of December 29th of '77 or shortly -- A. I spoke to him on the phone, and he said that we had to have this amount of money in. Otherwise, they were going to close the account. So I told him that when I get the check from Jamison Construction [the contractor on the MAA job] and Hanson Kelly Construction, I will bring it in.
>
> "Q. So you definitely remember saying that you were going to get your money from those two sources? A. They were the only two I had left -- Yes, I do -- the only two that I had money coming from."

Clawson testified further to having discussed this same matter with an employee in the Billings GE office prior to making the payment, and that at the time of making payment, he told the employee: "They paid me. Now here's yours." Clawson's understanding was that the payments would go to pay off the MAA job and the Hanson Kelly job.

The record does not contain any testimony from the employee in Billings, and in fact, it is not clear as to whether the check was hand-delivered to GE by Clawson or if it was mailed to GE in Salt Lake City. Nonetheless, the check used to pay the $37,749.69 contained no notation as to how it was to be applied or as to the source of the funds. Clawson did not endorse the check from the contractor (Jamison) directly over to GE, but rather deposited Jamison's check and wrote a separate check to GE. Additionally, even if GE had been told that the funds in question came from Jamison Construction, the record does not show that GE necessarily knew of the connection between Jamison, Clawson and the MAA job. The GE invoices pertaining to the MAA job were designated "AAA" but no mention of Jamison Construction was on the invoices. Based on this testimony, the District Court Judge found:

> "There is some uncertainty as to whether the check was delivered locally or whether it was mailed to Salt Lake City, but, in any event, it was delivered to plaintiff without anything being expressly said at that tme as to what portion of the account it was to apply upon. In retrospect, Clawson, of AAA Electric, testified that he assumed it would go to pay off the jobs from which the payment to him had come under his comment at the time of delivery, 'I got mine, now here is yours.' However, the discussion in which the $37,749.69 payment became fixed related to the September and October balances, none of which involved the Montana Automobile Association job. So, application of the payment to the September and October balances did not operate to extinguish liability for the purchases of supplies that went into that job."
> (Finding of fact, No. 4.)

Appellant also points to lien waivers which the contractor Jamison required Clawson to sign at the time that Jamison paid Clawson:

> "29 December, 1977, for labor and material on the Montana Automobile Association contract in the amount of $4,631.55." (Exhibit A)

Appellant contends that the existence of the lien waivers brings this case within the rule of Carroll v. Beck (6th Cir. 1945), 151 F.2d 964. In that case the rule was set out that a debtor may

control the application of funds if the debtor owes more than one matured debt to the creditor. But this power is limited. If the creditor knows the source of the debtor's funds and knows of a duty of the debtor to discharge a particular debt, then the creditor must so apply the funds. Carroll, 151 F.2d at 966.

Many courts dispute this holding, finding no such duty in the creditor. See Annot., 166 A.L.R. 641, 642. Montana has not ruled directly on this question, although Montana appears to support the view of no duty at least in suretyship cases. See National Bank v. Bingham (1931), 91 Mont. 62, 72, 5 P.2d 554, 556-557; Annot., 57 ALR2d 855, 859-860. However, it is not necessary for this Court to address that issue here. There is nothing in the record to indicate that GE had any knowledge whatsoever of the lien waivers, nor was there any determination that the lien waivers evidenced a contractual duty of Clawson's to apply the payment to the MAA job. For these reasons, we reject appellant's argument based on Carroll, supra, and related cases.

This Court is not unmindful of the harsh results in this case. MAA paid its contractor for the work done on its building, and now MAA is in a position of having to pay again. GE was able to use MAA's money to pay old and perhaps uncollectible debts, and will now get additional money from MAA to pay the Clawson/MAA debt. However, based on the judge's factual findings, which we find to be supported by substantial evidence, we determine that section 28-1-1106, MCA, requires this result. This Court is faced with a case in which the legislature has set forth a clear mandate, which the Court is obliged to follow. That such an inequitable result occurred here suggests that the legislature should review this statute which has been in the codes virtually unchanged since 1895, despite drastic changes in the conduct of business.

The judgment of the District Court is affirmed.

_____
                                    Chief Justice

We concur:

_____

_____

_____
Justices

- 7 -